UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE, MARY DOE, and JAMES DOE, </br></br>Plaintiffs, </br></br>v. </br></br>TRUSTEES OF BOSTON COLLEGE, PAUL J. CHEBATOR, CAROLE HUGHES, CATHERINE-MARY RIVERA, PATRICK J. KEATING, and BARBARA JONES, </br></br>Defendants. | Case No. _____ |

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF MOTION TO PROCEED UNDER
<u>PSEUDONYMS AND FOR PROTECTIVE ORDER</u>**

**INTRODUCTION**

In October 2012, plaintiff John Doe was a first-semester senior at defendant Trustees of Boston College ("the University") when he was falsely accused of a violent sexual assault by a fellow student. Thereafter, until his suspension from the University, he was victimized by officials who administered the University's disciplinary procedures. Those officials violated the University's regulations as well as the University's promises to protect the rights of the accused. These violations occurred throughout the investigative, prosecutorial, and adjudicative phases of the proceedings. Moreover, the regulations themselves violated the guarantee of due process mandated by a federal statute for such disciplinary procedures. The University later compounded its wrongdoing by conducting a sham review of the disciplinary process and rejecting additional evidence not available at John's hearing, including forensic and video

evidence. The Suffolk County District Attorney's Office had found the same evidence to be entirely exculpatory and unequivocally dismissed all criminal charges against John.

Included in the relief sought by John and his co-plaintiff parents is a judgment that, *inter alia*, (1) declares the University's investigation, prosecution, and adjudication of the charge against Doe to be contrary to the University's contractual and other obligations, contrary to its own rules and regulations, and contrary to federal and state law; (2) requires expungement of the entire incident from the University's records; and (3) provides other equitable relief. John also seeks damages for the injuries caused by the University, including ongoing harm to his reputation and loss of future career prospects.

Knowledge of the false accusations, the University's conduct, and John's punishment has been confined to a limited number of individuals in the University community. Similarly, even though John faced criminal charges that were a matter of public record, there was absolutely no publicity. Given this limited dissemination of information and John's desire to clear his name and obtain a judicial determination that the University acted improperly from the time it first received the false charges, it is plain that leave for plaintiffs to litigate pseudonymously should be granted. Otherwise, the non-monetary relief described above, if granted, would be nullified for all practical purposes, particularly in this age of electronic dockets and Internet search engines. Moreover, John's reputational injury giving rise to the claim for monetary damages would be exacerbated if he and his parents[1] were required to litigate in their own names.

The Court should grant the motion for the reasons fully set forth below.

---

[1] Although John's parents do not seek the same damages as John, their identification would be tantamount to John's identification.

## STATEMENT OF FACTS

Plaintiffs refer the Court to the statement of facts contained in the complaint, which is incorporated by reference.

## ARGUMENT

### I. THE COURT SHOULD PERMIT PLAINTIFFS TO PROCEED UNDER PSEUDONYMS.

Although Federal Rule of Civil Procedure 10(a) generally requires that a complaint state the names of all parties, a district court has the discretion to allow a party to litigate pseudonymously. *Doe v. Bell Atlantic Bus. Sys. Servs., Inc.* 162 F.R.D. 418, 420 (D. Mass. 1995). Although "there is a presumption in favor of disclosure," the movant "may rebut the presumption by showing that a need for confidentiality exists." *Id.* In addition, "a court must balance the need for confidentiality against the public interest in disclosure." *Id.*

Although the First Circuit has not established standards for determining when a litigant may employ a pseudonym, this Court and other federal courts have identified a number of factors that should be considered, including the following: (a) whether identification of the plaintiff would result in other harm, including whether "the injury litigated against would be incurred as a result of the disclosure of plaintiff's identity"[2]; (b) whether the plaintiff's "identity is already accessible to the public"[3]; (c) "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity"[4]; (d) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the

---

[2] *Bell Atlantic*, 162 F.R.D. at 420. *See also Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (same); *Doe v. Rostker*, 89 F.R.D. 158, 162 (N.D. Cal. 1981) (same).
[3] *Doe v. Word of Life Fellowship, Inc.*, 2011 WL 2968912, at *2 (D. Mass. 2011).
[4] *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 190 (2d Cir. 2008) (citation omitted).

litigants' identities"[5]; (e) whether there are "less drastic means" for protecting the confidentiality of the plaintiff[6]; and (f) whether the defendant would be prejudiced in the litigation.[7]

### A. Effect of the Litigation on the Relief Sought and Other Privacy Considerations

Of the factors identified by this Court, the most significant in this case is whether "the injury litigated against would occur as a result of the disclosure of plaintiff's identity." *Bell Atlantic*, 162 F.R.D. at 420. Here, plaintiffs seek, among other remedies, equitable relief that would clear John Doe's record and his name; and John seeks money damages for past and future harm to his reputation as well as for harm to his future career prospects.

Plaintiffs thus seek to eliminate, as best they can, the harm that has resulted from defendants' improper actions. Requiring plaintiffs to use their own names would not only be contrary to a fundamental purpose of this suit, but would increase the harm suffered. In other words, "if plaintiffs are required to reveal their identity . . . , they will already have sustained the injury which by this litigation they seek to avoid." *Roe v. Ingraham*, 364 F. Supp. 536, 541 n.7 (S.D.N.Y. 1973) (allowing use of pseudonyms). Similarly, in *Doe v. Rostker*, 89 F.R.D. 158 (N.D. Cal. 1981), the court reached a different result than in *Ingraham*, but recognized the validity of the *Ingraham* analysis, stating that a plaintiff would be entitled to proceed pseudonymously if use of his or her actual name would "indelibly connect" the plaintiff to a "stigmatizing" event, regardless of the outcome of the litigation. *Id.* at 161-62.

This "indelible connection" with a "stigmatizing" event – here, alleged digital rape – is precisely the reputational harm that John will suffer if he and his parents are required to use their actual names. Plaintiffs seek to redress the injuries caused by defendants, which include a

---

[5] *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006)
[6] *MacInnis v. Cigna Grp. Ins. Co.*, 379 F. Supp. 2d 89, 90 (D. Mass. 2005) (citation omitted).
[7] *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).

wrongfully-obtained finding that John committed a sex crime. One of plaintiffs' primary goals in bringing this action is to obtain a judicial declaration that the University's investigation, prosecution, and adjudication of the alleged offense were unlawful. This goal – to truly clear John's record for all purposes – would be thwarted if plaintiffs' actual names were used in public filings that, by reason of the electronic docket, would be available all over the world with a few clicks of a mouse. Similarly, if pseudonyms are not permitted, it is a virtual guarantee that the first item in the results of a Google search of John's name would be forever related to the digital rape allegations, regardless of the ultimate result of this lawsuit.

The effect of technology is of increased analytical importance because of the advent of electronic filing, the increasing use of the Internet as a legal research tool, and the ubiquity of Internet search engines. Plaintiffs would have been entitled to use pseudonyms before these developments, and now have a greater entitlement because of the near-universal accessibility of the information at issue once suit is filed. *See EW v. New York Blood Ctr.*, 213 F.R.D. 108, 112-13 (E.D.N.Y. 2003) ( finding of "concrete and cognizable interest in proceeding by pseudonym" based in part on "access to court files by those surfing the Internet.") *See generally* Jayne S. Ressler, *Privacy, Plaintiffs, and Pseudonyms: The Anonymous Doe Plaintiff in the Information Age*, 53 U. Kan. L. Rev. 195, 196-205 (2004). John should not be forced to incur greater harm because he seeks to vindicate his rights.

B. **Existing Public Access to Identity**

Another factor identified by this Court and other courts is whether the plaintiff's "identity is already accessible to the public." *Doe v. Word of Life Fellowship, Inc.*, 2011 WL 2968912, at *2 (D. Mass. 2011). *See also Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 190 (2d Cir. 2008) (citation omitted). Although John Doe was the subject of – and ultimately exonerated by –

a criminal prosecution that was "public," that fact is not the end of the analysis, but the beginning of the analysis.

Despite John's arrest and arraignment on the charge of "indecent assault and battery," there was no publicity whatsoever. Nor does the Suffolk County District Court have electronic filing or a database searchable by the public. As far as the awareness of the general public is concerned, the charge and the eventual dismissal of the charge never occurred. As a result, knowledge of the criminal proceeding is as circumscribed as is the knowledge of the University's disciplinary proceeding.

The possibility that an industrious reporter or blogger might be able to take the information in the complaint, use it to dig through courthouse records, and discover John's identity should not affect the Court's analysis. The Suffolk County District Attorney's Office determined that they charged the wrong man and dismissed all charges against John without condition. John was a victim of misidentification; he was guilty of nothing more than being in the wrong place at the wrong time. The mere existence of the dismissed prosecution and the resulting "public record" should not be used as a basis to deny the use of pseudonyms in this litigation.

### C. Public Interest

As this Court has recognized, there is generally a "strong public interest in disclosure" of the plaintiff's identity. *Bell Atlantic*, 162 F.R.D. at 420. But a court is to further consider "whether the public's interest in the case would be best served by requiring that the litigants reveal their identities." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). Given the facts of this case, there is an "atypically weak public interest in knowing the litigants' identities . . . ." *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y 2006). The focus here is on the conduct of the University and its officials – specifically, the investigatory,

prosecutorial, and adjudicative processes, which produced an administrative record that must be examined in light of the University's own regulations as well as applicable federal and state law. Given the nature of the case, "[p]arty anonymity [will] not obstruct the public's view of the issues joined or the court's performance in resolving them." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).

Moreover, the public interest will be advanced by allowing plaintiffs to use pseudonyms. "[W]hen a plaintiff challenges governmental **or pseudogovernmental** action, the judicial process serves as a significant check on abuse of public power." *Del Rio*, 241 F.R.D. at 158 (emphasis added). The University wields pseudogovernmental power as a consequence of its decision to accept federal funds, a decision that subjects the University to the requirements of Title IX[8] and its regulations. *See* Complaint ¶¶ 45-54. Among those requirements is that a school's disciplinary procedures accord due process to the accused student in a case of sexual assault. *See id.* ¶¶ 51-54.

Plaintiffs have alleged that the University has abused the power and responsibility conferred on it by Title IX, and it is most certainly in the public interest that suits such as this one not be discouraged by requiring a plaintiff to litigate in his or her own name.

### D. Prejudice to Defendants

Finally, potential prejudice to the defendant should be considered. This factor has come into play in the reported cases only when the defendant does not know the plaintiff's identity and argues that discovery will be difficult or impossible. *See, e.g., Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 687 (11th Cir. 2001) (reversing denial of pseudonym motion); *Advanced Textile*, 214 F.3d at 1068, 1072.

---

[8] Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688.

Here, there will be no prejudice to defendants, as they well know the plaintiffs' identities. Moreover, there is no alternative for plaintiffs other than pseudonyms, which is the only available mechanism to protect their confidentiality and preserve a critical component of the relief sought, as discussed above.

## II. THE COURT SHOULD ISSUE A PROTECTIVE ORDER TO PROHIBIT DISCLOSURE OF PLAINTIFFS' IDENTITIES.

Should the Court grant plaintiffs leave to proceed under pseudonyms, it should also issue a protective order in aid of its ruling that would prohibit (a) defendants from disclosing plaintiffs' identities to third parties, except as may be necessary to defend this suit; and (b) such informed third parties from disclosing plaintiffs' identities.

## CONCLUSION

For all the foregoing reasons, the Court should grant plaintiffs' motion to proceed under pseudonyms and for protective order.

Respectfully submitted,

John Doe, Mary Doe, and James Doe

By their attorneys,

DLA PIPER LLP (US)

/s/ Matthew J. Iverson
Matthew J. Iverson (BBO # 653880)
33 Arch Street, 26th Floor
Boston, MA 02110
(617) 406-6000
(617) 406-6100 (fax)
matthew.iverson@dlapiper.com

Charles B. Wayne
500 8th Street, N.W.
Washington, D.C. 20004
(202) 799-4253
(202) 799-5253 (fax)
charles.wayne@dlapiper.com