UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN DOE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-10790-DJC |
| | ) | |
| TRUSTEES OF BOSTON COLLEGE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND INFORMATION CONCERNING
OTHER SEXUAL ASSAULT DISCIPLINARY PROCEEDINGS**

DLA PIPER LLP (US)

Matthew J. Iverson (BBO # 653880)
33 Arch Street, 26th Floor
Boston, MA 02110
(617) 406-6000
(617) 406-6100 (fax)
matthew.iverson@dlapiper.com

Charles B. Wayne (*pro hac vice*)
500 8th Street, N.W.
Washington, D.C.  20004
(202) 799-4253
(202) 799-5253 (fax)
charles.wayne@dlapiper.com

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................ 1

COMPLIANCE WITH LOCAL RULE 37.1 ........................................................... 2

FACTUAL BACKGROUND ..................................................................................... 2

ARGUMENT ............................................................................................................... 3

I.   THE COURT SHOULD COMPEL THE PRODUCTION OF DOCUMENTS AND
     INFORMATION CONCERNING OTHER SEXUAL ASSAULT COMPLAINTS
     AND PROCEEDINGS .......................................................................................... 3

     A. Procedural Posture ......................................................................................... 3

     B. The Documents and Information Sought and Their Relevance to this Action ................. 4

          1. Defendants' Answer ................................................................................ 6

          2. Proof of Title IX Claims ........................................................................ 8

II.  FERPA IS NO IMPEDIMENT TO THE REQUESTED DISCOVERY ............................... 10

III. THE DOCUMENTS AND INFORMATION ALREADY PROVIDED BY THE
     UNIVERSITY ARE INSUFFICIENT AND INCONSISTENT, AND PLAINTIFFS
     ARE ENTITLED TO FULL AND COMPLETE DISCOVERY ........................................... 14

CONCLUSION .......................................................................................................... 15

## INTRODUCTION

In *Bleiler v. College of the Holy Cross*, 2013 WL 4714340 (D. Mass. 2013), this Court addressed both the type and quantum of evidence needed to prove a Title IX claim, whether under the "erroneous outcome" standard or the "deliberate indifference" standard. As this Court and other courts have recognized, such evidence includes statements by members of the disciplinary tribunal or pertinent university officials that reflect gender bias; "patterns of decision-making" that tend to show the influence of gender; outdated views of the sexes that result in a presumption that females are sexual assault victims and men are sexual assault perpetrators; and evidence that a school has succumbed to pressure by the federal government or by interest groups to show that it is on the right side of the "campus rape culture" issue.

Moreover, as this Court and other courts have also recognized, this evidence comes not only from the disciplinary proceeding in issue in the particular case, but from an examination of the school's conduct over time, both before and after the proceeding in issue. The documents and information that defendants here have refused to produce are critical to plaintiffs' ability to prove the Title IX claims. Plaintiffs have requested all documents – including communications among University personnel – concerning sexual assault complaints made to the defendant University and resulting proceedings from August 1, 2005 to the present as well as related information in the form of an answer to an interrogatory. A complete response to these requests is necessary if plaintiffs are to have a fair opportunity to prove these claims. Apart from a minimal, inadequate response to the interrogatory, defendants have objected entirely to these discovery requests.

There is no question that the discovery requests in issue are appropriate under the scope-of-discovery provision as it currently exists in Fed. R. Civ. P. 26 or in the amendment due to take effect on December 1. Defendants have identified the 31 sexual assault charges that proceeded

to a hearing during the stated period, and no claim of undue burden can legitimately be made. Finally, other courts have routinely allowed the very discovery sought here. The Court should grant the motion.

## COMPLIANCE WITH LOCAL RULE 37.1

A discovery conference concerning the matters addressed by this motion was held by telephone on September 4, 2015 between lead counsel for the respective parties. It was preceded and followed by correspondence relating to the same matters. Counsel did reach agreement on certain disputed discovery matters, but not as to those addressed in this motion and memorandum. Information fulfilling the remaining requirements of Local Rule 37.1 is set out below.

## FACTUAL BACKGROUND

In October 2012, plaintiff John Doe was a first-semester senior at defendant Trustees of Boston College (the "University") when he was falsely accused of a violent sexual assault by a fellow student. Thereafter, until his suspension from the University, he was victimized by officials who administered the University's disciplinary procedures. Those officials violated the University's regulations as well as the University's promises to protect the rights of the accused. These violations occurred throughout the investigative, prosecutorial, and adjudicative phases of the proceedings. Moreover, the regulations themselves violated the guarantee of due process mandated by a federal statute for such disciplinary procedures, Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688. The University later compounded its wrongdoing by conducting a sham review of the disciplinary process and rejecting additional evidence not available at John's hearing, including forensic and video evidence. The Suffolk County District Attorney's Office had found the same evidence to be entirely exculpatory and unequivocally dismissed all criminal charges against John.

2

The claims brought by John and his co-plaintiff parents fall into three categories:  (1) contract and quasi-contract; (2) negligent, reckless, or intentional conduct; and (3) violations of Title IX.  Included in the relief sought by plaintiffs is a judgment that, *inter alia*, (1) declares the University's investigation, prosecution, and adjudication of the charge against John to be contrary to the University's contractual and other obligations, contrary to its own rules and regulations, and contrary to federal and state law; (2) requires expungement of the entire incident from the University's records; and (3) provides other equitable relief.  Plaintiffs also seek damages for the injuries caused by the University.

## ARGUMENT

### I.   THE COURT SHOULD COMPEL THE PRODUCTION OF DOCUMENTS AND INFORMATION CONCERNING OTHER SEXUAL ASSAULT COMPLAINTS AND PROCEEDINGS.

#### A.   Procedural Posture

John Doe asserts two substantive Title IX claims, one based on the "erroneous outcome" standard (Count VI) and one based on the "deliberate indifference" standard (Count VII).  The former "require[s] a plaintiff to demonstrate that the conduct of the university in question [with regard to the alleged sexual assault disciplinary proceeding] was motivated by a sexual bias." *Bleiler*, 2013 WL 4714340, at *5 (citing *Yusuf v. Vassar College*, 35 F.3d 709, 715-16 (2d Cir. 1994)).  Under the latter, "the question is whether 'an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct.'"  *Bleiler*, 2013 WL 4714340, at *5 n.4 (quoting *Mallory v. Ohio Univ.*, 76 App'x 634, 638 (6th Cir. 2003)) (other citations omitted).

Defendants answered the complaint and made no motion to dismiss. As a result, the sufficiency of the Title IX allegations are not in issue,[1] and John Doe is entitled to discovery in order to narrow the issues, to obtain evidence for use at trial or for summary judgment, and to secure information about the existence of such evidence. *See generally* 8 Wright & Miller, *Federal Practice & Procedure* § 2001, at 18 (3d ed. 2010).

**B. The Documents and Information Sought and Their Relevance to this Action**

The discovery requests concerning prior sexual assault complaints and proceedings are as follows:

> **Document Request No. 26.** This request is directed only to the University: All documents concerning any investigation, evaluation, prosecution, adjudication, review, or appeal of a charge of sexual assault or similar offense (however denominated) made to the University from August 1, 2005 to the present.
>
> **Response.** The University objects to this request on the grounds that it is overly broad and unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.
>
> **Interrogatory No. 12.** This interrogatory is directed only to the University: Identify, and include the gender, of each University student against whom a complaint of sexual assault or similar offense was made, the finding on the complaint, and the sanctions and/or discipline imposed, if any, for the period of August 1, 2005 to date. For each such student, also state whether the [finding] was appealed and, if so, by whom, and the results of the appeal.
>
> **Response.** The University objects to this interrogatory on the grounds that it is overly broad and unduly burdensome and seeks

---

[1]   Otherwise stated, there is no *Twombly/Iqbal* or similar issue here. *See, e.g., Doe v. University of Mass.-Amherst*, 2015 WL 4306521, at *5, 8-9 (D. Mass. 2015) (dismissing Title IX claim under the *Twombly/Iqbal* pleading standard).

information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, the University states as follows: During the period of August 1, 2005 to the present, charges of sexual assault or sexual misconduct were brought against 31 students at the University, all of whom were men. In one of the cases, the student withdrew before any finding was made. In the remaining 30 cases, a finding of "responsible" was made on one or more charges in 20 cases, whereas a finding of "not responsible" on all charges was made in 10 cases. Appeals were filed in 16 cases in which a finding of "responsible" was made. One appeal resulted in the date of the student's dismissal being revised, whereas the other appeals were unsuccessful.

These two discovery requests seek documents and information relating to charges of sexual assault brought to the University and the resulting disciplinary proceeding, if any, for the past 10 years. The University has refused to produce any responsive documents and has given limited, insufficient information (discussed further below). The Court should order the production of the requested documents and a complete answer to the interrogatory for two basic reasons: (1) the defendants' denials and affirmative defenses contained in the answer make the requested documents and information not only relevant to John Doe's Title IX claims, but critical to his ability to prove them; and (2) the case law has identified such documents and information as necessary to the proof of Title IX claims.

### 1. Defendants' Answer

The complaint and the answer put the requested documents and information directly at issue. By way of example, John Doe's Title IX claims (Counts VI and VII) contain the following allegations, each of which has been denied by the University and the individual defendants:

- "The **erroneous outcome** of the hearing, appeal, and 2014 review can only be explained by gender bias against males in cases involving allegations of sexual assault. This bias is reflected in the patterns of decisionmaking by the University throughout the entire process." Complaint ¶ 175 (emphasis added).

- "Moreover, upon information and belief, in all, or in virtually all, cases of campus sexual misconduct at BC, the accused student is male and the accusing student is female. The University has created an environment in which it is impossible for a male accused of sexual assault to receive the due process guaranteed by Title IX. This significant gender-based statistical disparity demonstrates the existence of discrimination. In fact, the University impermissibly presumes male students 'guilty until proven innocent' based on invidious gender stereotypes." *Id.* ¶ 176.

- "There are at least four causes for this discriminatory environment at the University[:]" (1) a perceived threat of loss of federal funding; (2) personal expediency on the part of University officials; (3) a desire to safeguard the University's image and brand; and (4) "internal and external pressures, including efforts by those who wish to change the so-called 'campus rape culture' at the expense of the individual rights of the accused male students." *Id.* ¶¶ 177-80.

- "The resulting bias [against males] is obvious in the Sexual Assault Policies and Procedures. The presumption of guilt of an accused male student is reflected in the terms used to describe the accusers, who are invariably female: 'victims'; 'survivors'; victims/survivors'; and 'female victims/survivors.'" *Id.* ¶ 180.

- "The unusual facts of John's case led him to experience this invidious gender bias and discriminatory environment more acutely than the typical accused male student in a "he said/she said" situation. John was accused of a cold-blooded, violent sexual assault and immediately arrested by the State Police. The

University officials in charge of and involved in the disciplinary process could not even entertain the possibility that John, a male, might be innocent.  Indeed, in the words of John's mother, Dean Hughes treated him like a 'contemptible criminal.'" Id. ¶ 181.

- "Moreover, the conclusion of the 2014 review ordered by Father Leahy can only be explained by gender bias.  The Commonwealth of Massachusetts exonerated John, but the University did not, even with the identical exculpatory evidence." *Id.* ¶ 182.

- In both 2012 and 2014, "John, based solely on his gender, has suffered and continues to suffer the effects of the University officials' **deliberate indifference** . . . ." *Id.* ¶ 191 (emphasis added).

- In 2012, despite actual notice of the University's misconduct relating to John Doe's disciplinary proceeding and his punishment, the University officials named in ¶ 185 "failed and refused to take any steps to correct the misconduct and resulting harm to John even though they had the authority to institute corrective measures." *Id.* ¶ 186.  "This failure and refusal can only be explained by gender bias against males . . . ." *Id.* ¶ 187.

- In 2014, University officials had actual notice of the same misconduct, but similarly failed and refused to institute corrective measures. *Id.* ¶¶ 188-89.

In addition to the defendants' denials of those allegations, certain of their affirmative defenses also put the requested documents and information directly at issue:

- "John Doe's Title IX claims all fail as a matter of law because his gender was not a substantial or motivating factor for any of the University's actions." Aff. Def. No. 9.

- "John Doe's Title IX 'deliberate indifference' claim fails as a matter of law because John Doe was not subject to gender or sexual harassment of which University officials had actual knowledge and which was so severe, pervasive, and objectively offensive that it can be said to have deprived John Doe of access to the educational opportunities or benefits provided by the University." Aff. Def. No. 10.

- "John Doe's Title IX claims all fail because the University has proper policies and procedures in place to prevent and remedy claims of sex discrimination and actively enforces such policies and procedures." Aff. Def. No. 11.

### 2. Proof of Title IX Claims

This Court has identified the type of proof needed for a plaintiff like John Doe to prevail on a Title IX claim: "'competent evidence' and 'specific facts' such that a reasonable jury could resolve his sex-based Title IX claim in his favor." *Bleiler*, 2013 WL 4714340, at *6 (citations omitted). *See also Doe v. University of Mass.-Amherst*, 2015 WL 4306521, at *9 (D. Mass. 2015) (need for proof "from which a factfinder could plausibly infer the influence of gender bias on the outcome of [the] disciplinary proceeding" (on motion to dismiss)).

Beyond this general statement, this Court and other courts have identified specific categories of evidence that will satisfy the needed quantum of proof:

- "statements by members of the disciplinary tribunal" reflecting gender bias[2];

- "statements by pertinent university officials" reflecting gender bias[3];

- "patterns of decision-making that also tend to show the influence of gender"[4];

- an impermissible "chauvinistic view of the sexes"[5] that manifests itself in (1) the "antiquated notion that 'men are sexual aggressors and women are victims'"[6]; (2) "a campus environment whereby

---

[2]   *Bleiler*, 2013 WL 4714340, at *5 (citation omitted); *Doe v. Washington & Lee Univ.*, 2015 WL 4647996, at *9 (W.D. Va. 2015) (quoting *Yusuf*, 35 F.3d at 715) (allowing discovery to proceed on Title IX claims); *Doe v. Columbia Univ.*, 2015 WL 1840402, at *11 (S.D.N.Y. 2015) (same) (motion to dismiss); *Yu v. Vassar College*, 2015 WL 1499408, at *22 (S.D.N.Y. 2015) (same) (motion for summary judgment).

[3]   *Bleiler*, 2013 WL 4714340, at *5 (citation omitted); *Washington & Lee*, 2015 WL 4647996, at *9 (quoting *Yusuf*, 35 F.3d at 715); *Columbia*, 2015 WL 1840402, at *11 (same); *Yu*, 2015 WL 1499408, at *22 (same).

[4]   *Bleiler*, 2013 WL 4714340, at *5 (citation omitted); *Mallory*, 76 F. App'x at 640; *Washington & Lee*, 2015 WL 4647996, at *9 (quoting *Yusuf*, 35 F.3d at 715); *Columbia*, 2015 WL 1840402, at *11 (same); *Yu*, 2015 WL 1499408, at *22 (same); *Wells v. Xavier Univ.*, 7 F. Supp. 3d 746, 751 (S.D. Ohio 2014).

[5]   *Bleiler*, 2013 WL 4714340, at *5 (citation omitted).

[6]   *Mallory*, 76 F. App'x at 639; *Yu*, 2015 WL 1499408, at *26 (quoting *Mallory*).

the term *sexual assault victim* was presumed to refer to a woman, and *sexual assault perpetrator* was presumed to refer to a man"[7]; or (3) that men are "'guilty until proven innocent' based on invidious sex stereotypes"[8];

- evidence that a school succumbed to pressure from the Department of Education and the threat of loss of federal funds, and aggressively and improperly disciplined male students accused of sexual assault[9]; and

- evidence that a school aggressively and improperly disciplined male students accused of sexual assault in order to demonstrate to the "general public" that it was on the right side of the "campus rape culture" issue.[10]

And, as this Court and other courts have recognized, the proof required comes not only from the disciplinary proceeding in issue in the particular case, but from the school's conduct over time – both before and after the proceeding in question. As this Court held in *Bleiler*, a school's "pattern of decision-making" in its "disciplinary procedures governing sexual assault claims" must be examined to see if those procedures are "discriminatorily applied or motivated by a chauvinistic view of the sexes." 2013 WL 4714340, at *5 (citations and internal quotation marks omitted). As both the Second and Sixth Circuits have held, reliance on the sole proceeding at issue is often insufficient to show the bias required by Title IX: "[O]ne case by an individual who was subjectively dissatisfied with a result does not constitute a 'pattern of decision-making,' referred to in *Yusuf* [a Second Circuit decision] as a basis for finding bias." *Mallory*, 76 F. App'x at 640. *See also Yusuf*, 35 F.3d at 715. Rather, a plaintiff such as John Doe is entitled to discovery in order to prove "patterns – not a single instance – of decision-

---

[7]   *Doe v. Salisbury Univ.*, 2015 WL 5005811, at *14 (D. Md. 2015) (emphasis in original) (allowing discovery to proceed on Title IX claim).

[8]   *Sassaman v. Gamache*, 566 F.3d 307, 314 (2d Cir. 2009) (Title VII action) (Courts look to both Title VII and Title VI case law in interpreting Title IX. *Yusuf*, 35 F.3d at 714.)

[9]   *Salisbury*, 2015 WL 5005811, at *14; *Washington & Lee*, 2015 WL 4647996, at *10.

[10]   *Salisbury*, 2015 WL 5005811, at *14.

making that would also demonstrate the influence of entrenched gender discrimination." *Blank v. Knox College*, 2015 WL328602, at *4 (C.D. Ill. 2015) (motion to dismiss granted due to defective pleading).

Courts have routinely allowed the very discovery sought by plaintiffs here: documents and information relating to other sexual assault disciplinary proceedings. In *Doe v. The Reed Institute*, No. 3:15-cv-617-MO, (D. Ore. Sept. 3, 2015) (order), the court ordered the defendant, Reed College, to produce (1) all "open and closed non-privileged disciplinary files of any student against whom a report or complaint was made alleging a violation of Reed's" sexual harassment or sexual misconduct policies, including both formal and informal complaints between August 1, 2008 and June 1, 2015; and (2) all similar documents for the same period alleging a violation of Reed's "Honor Principle." *See* Ex. A at 2. Similarly, in *Doe v. Salisbury Univ.*, 2015 WL 5005811, at *14-15 (D. Md. 2015) the court allowed Title IX discovery to proceed when plaintiffs alleged, *inter alia*, a campus environment tainted by gender bias, the possible existence of communications evidencing the school's "intent to favor female students alleging sexual assault over male students . . . accused of sexual assault," and actions affected by pressure from the federal government to "aggressively disciplin[e] male students accused of sexual assault." Another district court likewise permitted Title IX discovery to proceed where the plaintiff alleged that the defendant school's procedures "amount[ed] to 'a practice of railroading accused students.'" *Doe v. Washington & Lee Univ.*, 2015 WL 4647996, at *10 (W.D. Va. 2015). *See also* cases cited in section II *infra*.

## II.  FERPA IS NO IMPEDIMENT TO THE REQUESTED DISCOVERY.

In cases such as this, schools sometimes invoke The Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA") as a basis to avoid entirely or limit production of "education records" of non-party current or former students. Such information is ordinarily

protected from disclosure by the University absent consent by the relevant students, in accordance with FERPA and the corresponding regulations promulgated by the Department of Education. *See* generally 34 C.F.R. § 99.3 (defining "education records"). But the University cannot properly invoke FERPA to limit disclosure in a Title IX case like this one.

As an initial matter, numerous courts have held that FERPA "does not . . . , by its express terms, prevent discovery of relevant school records under the Federal Rules of Civil Procedure." *Richardson v. Board of Educ. of Huber Heights City Sch.*, 2014 WL 8619228, at *2 (S.D. Ohio 2014) (quoting *Edmonds v. Detroit Pub. Sch. Sys.*, 2012 WL 5844655, at *3 (E.D. Mich. 2012); *Ellis v. Cleveland Mun. Sch. Dist.*, 309 F. Supp. 2d 1019, 1022 (N.D. Ohio 2004)); *see also Bauer v. Kincaid*, 759 F. Supp. 575, 589 (W.D. Mo. 1991) ("FERPA is not a law which prohibits disclosure of educational records."). Nor does FERPA "create a privilege that allows an educational institution to refuse to disclose student information . . . ." *Nkemakolam v. St. John's Military Sch.,* 2012 WL 6610980, at *3 (D. Kan 2012). As a result, "documents covered by FERPA are indeed discoverable in the context of a civil action." *Garza v. Scott & White Mem'l Hosp.*, 234 F.R.D. 617, 624 (W.D. Tex. 2005).

Moreover, the Supreme Court has held that FERPA's nondisclosure provisions "speak only to the Secretary of Education," and do not confer any enforceable individual rights. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002). "Congress expressly authorized the Secretary of Education" to interpret and enforce FERPA. *Id.* at 289. In that regard, the Department of Education has been clear regarding the interplay between FERPA and Title IX. Specifically, the April 4, 2011 "Dear Colleague" letter issued by the Department's Office for Civil Rights stated the following:

> In 1994, Congress amended the General Education Provisions Act (GEPA), of which FERPA is a part, to state that nothing in GEPA "shall be construed to affect the applicability of . . . Title IX of Education Amendments of 1972, . . . or other statutes prohibiting discrimination, to any applicable program." 20 U.S.C. § 1221(d). The Department interprets this provision to mean that FERPA continues to apply in the context of Title IX enforcement, but *if there is a direct conflict between the requirements of FERPA and the requirements of Title IX, such that enforcement of FERPA would interfere with the primary purpose of Title IX to eliminate sex-based discrimination in schools, the requirements of Title IX override any conflicting FERPA provisions. See 2001 Guidance at vii.*"[11]

Under the guidance provided by the "Dear Colleague" letter, therefore, John Doe's interest in the requested documents and information, in connection with vindicating his Title IX rights, "override[s] any conflicting FERPA provisions," to the extent any such conflicting provisions exist at all.

Accordingly, courts have routinely permitted such discovery in cases like this one. For example, in the *Reed* case, *supra*, the court required production of documents related to disciplinary proceedings of students and former students who were not parties and established a protocol for doing so: (1) Reed was required to give notice to accused students as well as their accusers in the form set out in the court's order; (2) the recipients of the notice had 14 days to "seek protective action in accordance with 34 C.F.R. § 99.31(a)(9)(ii)"; (3) absent such a request, Reed was required to promptly produce the non-party student records "without redactions and with all personally identifiable information included"; (4) the non-party student records were to be treated as "confidential" or "attorney's eyes only" pursuant to a protective order entered by the court; and (5) if such records were filed with the court, personally identifiable information

---

[11] "Dear Colleague" Letter from Russlynn Ali, Assistant Sec'y for Civil Rights, U.. S. Dep't of Educ, Sexual Violence, at 13, n.32 (April 4, 2011) (available at http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf) (emphasis added).

must be redacted. Ex. A at 3-5. The protective order entered by the court is attached as Exhibit B.

Similarly, in *Dempsey v. Bucknell University*, No. 4:11-cv-1679-MWB (M.D. Pa. June 29, 2012) (order), the parties did not even dispute that the plaintiff-student could receive copies of education records of non-party students, so long as the court ordered their release. Defendant Bucknell submitted a joint motion for an order regarding the release of "Education Records," specifically requesting that the court issue an order directing it to produce such records. Bucknell premised its request on 34 C.F.R. § 99.31(a)(9)(i), which provides that consent for disclosure of education records, otherwise required by FERPA, is not necessary when "[t]he disclosure is [made] to comply with a judicial order." The court granted Bucknell's request and entered the requested order, allowing Bucknell to produce the records. *See* Ex. C.

The University of the South sought a similar order in *Doe v. The University of the South*, No. 4:09-cv-62 (E.D. Tenn. Feb. 9, 2010) (joint motion for issuance of order pursuant to FERPA). The university had already produced redacted versions of documents to the plaintiff-student, but requested that the court issue an appropriate order so that it could provide unredacted copies. The court issued the order. *See* Ex. D.

The court was faced with a slightly different, but still relevant, inquiry in *Yu v. Vassar College*, No. 1:13-cv-4373-RA-MHD (S.D.N.Y. March 7, 2014) (endorsed order). There, the plaintiff-student objected to defendant Vassar's initial redaction of the personally identifiable information of non-party students included in plaintiff's own education record. Vassar objected to the information's release, citing FERPA, and argued that in any event it would have to give notice to the affected students. The court disagreed and ordered that the personally identifiable information of students named in plaintiff's disciplinary record be released, without notice to

13

those non-party students.  The court also permitted the release of an audio recording (presumably

related to the disciplinary proceeding), but allowed for a two-week period for notice to non-party

students affected before its release.  The court's order did not envision any additional period for

those non-party students to be heard or to raise any objections.  *See* Ex. E.

In short, the University should not be heard to say that FERPA is a bar to providing the

requested documents and information.[12]

### III. THE DOCUMENTS AND INFORMATION ALREADY PROVIDED BY THE UNIVERSITY ARE INSUFFICIENT AND INCONSISTENT, AND PLAINTIFFS ARE ENTITLED TO FULL AND COMPLETE DISCOVERY.

The University has refused to produce any documents concerning sexual assault

disciplinary proceedings during the stated 10-year period.  Instead, it has produced a spreadsheet

containing minimal information.  See Ex. G.  And even that scant information is inconsistent

with the answer to interrogatory no. 12 above.  The interrogatory answer states that of 30 cases –

all males – that proceeded to a finding, 20 of the accused were found responsible on at least one

charge, and the remaining 10 were found "not responsible" on all charges.  But the spreadsheet

includes 5 separate proceedings for which the result was "no finding," which is a different result

from "not responsible" under the University's procedures.

In addition, the University's interrogatory answer and spreadsheet do not address a

critical category of sexual assault complaints made to the University:  complaints that did not

proceed to a hearing and the disposition of each such complaint.

The requested documents and information are essential if plaintiffs are to have a fair

opportunity to prove the Title IX claims.  This Court and other courts have repeatedly recognized

---

[12]   The University takes the position that FERPA does not contemplate production of documents under Fed. R. Civ. P. 34, but requires subpoena to be issued, even to a party.  Plaintiffs have served such a subpoena.  See Ex. F.

that documents and information related to similar disciplinary proceedings are directly relevant to the proof of such claims.   And, it must be emphasized, that **all** documents related to a complaint or proceeding must be produced, including emails and other communications among University personnel.  It is in those documents that plaintiffs will discover statements by tribunal members or pertinent university officials reflecting gender bias; "patterns of decision-making" that show the influence of gender; impermissible "chauvinistic" and "antiquated" views of the sexes that result in prejudice to males; evidence that the University was affected by pressure from the federal government, resulting in prejudice to males; and evidence that the University, seeking to protect its image and brand, aggressively and improperly disciplined male students accused of sexual assault.

## CONCLUSION

For all the foregoing reasons, the Court should grant the motion to compel production of documents and information concerning other sexual assault disciplinary proceedings.


Respectfully submitted,


John Doe, Mary Doe, and James Doe

By their attorneys,

DLA PIPER LLP (US)


/s/ Matthew J. Iverson_____
Matthew J. Iverson (BBO # 653880)
33 Arch Street, 26th Floor
Boston, MA 02110
(617) 406-6000
(617) 406-6100 (fax)
matthew.iverson@dlapiper.com

/s/ Charles B. Wayne
Charles B. Wayne (*pro hac vice*)
500 8th Street, N.W.
Washington, D.C.  20004
(202) 799-4253
(202) 799-5253 (fax)
charles.wayne@dlapiper.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October, 2015, a copy of the foregoing was served by electronic mail using the CM/ECF system, which will then send notification of such filing to all counsel of record.

/s/ Charles B. Wayne
Charles B. Wayne