UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____ )
                                          )
JOHN DOE, MARY DOE, and                   )
JAMES DOE,                                )
                                          )
         Plaintiffs,                      )
                                          )
v.                                        )          Case No. 1:15-cv-10790-DJC
                                          )
TRUSTEES OF BOSTON COLLEGE,               )
PAUL J. CHEBATOR, CAROLE HUGHES,          )
CATHERINE-MARY RIVERA, PATRICK            )
J. KEATING, and BARBARA JONES,            )
                                          )
         Defendants.                      )
_____ )

**MEMORANDUM IN SUPPORT OF BOSTON COLLEGE'S
MOTION FOR SUMMARY JUDGMENT**

Daryl J. Lapp (BBO No. 554980)
   daryl.lapp@lockelord.com
Elizabeth H. Kelly (BBO No. 672277)
   liz.kelly@lockelord.com
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA 02199
617.230.0100

*Counsel for the Defendants*

May 16, 2016

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................. 1

    A.    COUNT I – BREACH OF CONTRACT – 2012 DISCIPLINARY
           PROCEEDING ............................................................................................ 1

          1.    The Decision Was Not Arbitrary and Capricious ..................................... 1

          2.    The Process Was Fundamentally Fair ....................................................... 2

          3.    BC Followed its Policies and Procedures ................................................. 3

                a.    Doe had no right to a "threshold evaluation" of his case,
                      much less one that would have allowed him to avoid a
                      hearing altogether ............................................................................ 3

                b.    Doe's case involved an appropriate investigation by the
                      Board ................................................................................................ 5

                c.    BC set a fair and reasonable hearing date ...................................... 7

                 d.    Doe had entirely fair and reasonable notice of the charges ........... 8

                 e.    Doe had the assistance of counsel per BC's policies ..................... 9

                 f.    The Board properly excluded testimony by Doe's private
                      investigator .................................................................................... 10

                g.    There is no evidence of bias ......................................................... 11

                 h.    Doe's case was heard by a trained, competent tribunal ............... 13

                 i.    Doe was presumed innocent and did not have the burden of
                      proof .............................................................................................. 13

                j.    The evidence amply supported the Board's decision ................... 13

                 k.    BC had no obligation to record the hearing .................................. 13

                 l.    Doe had the right to request an appeal, which was handled
                      fairly and in accordance with BC's policies. ............................... 14

    B.    COUNT II – PROMISSORY ESTOPPEL ......................................... 16

    C.    COUNT III – BREACH OF CONTRACT – 2014 REVIEW ............ 16

    D.    COUNT IV – COMMON LAW DUTY OF BASIC FAIRNESS ...... 17

    E.    COUNT XIV – UNJUST ENRICHMENT ........................................ 17

    F.    COUNT VI – "ERRONEOUS OUTCOME" UNDER TITLE IX ...... 17

    G.    COUNT VII – "DELIBERATE INDIFFERENCE" UNDER TITLE IX .......... 18

    H.    COUNT V – DECLARATORY JUDGMENT ................................... 19

    I.    COUNTS VIII-XIII – NEGLIGENCE AND EMOTIONAL DISTRESS
           CLAIMS ....................................................................................... 20

CONCLUSION ........................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aldrich v. Young*,
No. CA 13-10466-DPW, 2013 WL 3802436 (D. Mass. July 18, 2013).................................20

*Anderson v. Washington Cty. Sch. Bd.*,
No. Civ. A. 86-0053-R(A), 1989 WL 154346 (W.D. Va. Feb. 28, 1989), *aff'd*,
891 F.2d 286 (4th Cir. 1989) ..................................................................................................5

*Bleiler v. Coll. of Holy Cross*,
No. 11-11541, 2013 WL 4714340 (D. Mass. Aug. 26, 2013) .........................................17, 18

*City of Cambridge v. Civil Serv. Comm'n*,
43 Mass. App. Ct. 300, 682 N.E.2d 923 (1997) .......................................................................1

*Cloud v. Trustees of Boston Univ.*,
720 F.2d 721 (1st Cir. 1983)............................................................................................1, 2, 15

*Coveney v. Pres. and Trs. of Holy Cross Coll.*,
388 Mass. 16, 445 N.E.2d 136 (1983) .........................................................................1, 10, 15

*Dinu v. Pres. and Fellows of Harvard Coll.*,
56 F. Supp. 2d 129 (D. Mass. 1999) .......................................................................................1

*Doe v. Brandeis Univ.*,
No. CV 15-11557-FDS, 2016 WL 1274533 (D. Mass. Mar. 31, 2016) .............................3, 16

*Doe v. Brown Univ.*,
No. CV 15-144, 2016 WL 715794 (D.R.I. Feb. 22, 2016)................................................16, 19

*Doe v. Columbia Univ.*,
101 F. Supp. 3d 356 (S.D.N.Y. 2015)......................................................................................13

*Doe v. Univ. of the S.*,
687 F. Supp. 2d 744 (E.D. Tenn. 2009)..............................................................................17, 19

*Gabrilowitz v. Newman*,
582 F.2d 100 (1st Cir. 1978)....................................................................................................10

*Gebser v. Lago Vista Indep. Sch. Dist.*,
524 U.S. 274 (1998)..................................................................................................................19

*Gomes v. Univ. of Maine Sys.*,
365 F. Supp. 2d 6 (D. Me. 2005) .............................................................................................14

*Gorman v. Univ. of Rhode Island*,
  837 F.2d 7 (1st Cir. 1988) ...................................................................................11, 12, 14, 15

*Guckenberger v. Boston Univ.*,
  957 F. Supp. 306 (D. Mass. 1997) ...........................................................................................1

*Havlik v. Johnson & Wales Univ.*,
  509 F.3d 25 (1st Cir. 2007)..............................................................................................1, 15

*Ikpeazu v. Univ. of Nebraska*,
  775 F.2d 250 (8th Cir. 1985) ..........................................................................................11, 12

*Jones v. Hobbs*,
  745 F. Supp. 2d 886, 892 (E.D. Ark. 2010) ............................................................................19

*Karasek v. Regents of the Univ. of Cal.*,
  No. 15-cv-03717, 2015 WL 8527338 (N.D. Cal. Dec. 11, 2015)...........................................19

*Kiani v. Trs. of Boston Univ.*,
  No. 04–cv–11838, 2005 WL 6489754 (D. Mass. Nov. 10, 2005).........................................1, 2

*Lawrence v. Kuenhold*,
  271 F. App'x 763 (10th Cir. 2008) ........................................................................................20

*Mallory v. Ohio Univ.*,
  76 Fed. Appx. 634 (6th Cir. 2003)..........................................................................................17

*Marshall v. Ohio Univ.*,
  No. 2:15-CV-775, 2015 WL 1179955 (S.D. Ohio Mar. 13, 2015)...........................................19

*Morris v. Brandeis Univ.*,
  No. 01-P-1673, 60 Mass. App. Ct. 1119, 2004 WL 369106 (Mass. App. Ct.
  Feb. 27, 2004) ........................................................................................................................2

*Nash v. Auburn Univ.*,
  812 F. 2d 655 (10th Cir. 1987) ................................................................................................6

*Salau v. Denton*,
  No. 2:14-CV-04326-SRB, 2015 WL 5885641 (S.D. Mo. Oct. 8, 2015) ................................18

*Santagate v. Tower*,
  64 Mass. App. Ct. 324, 833 N.E.2d 171 (2005) ....................................................................17

*Santiago v. Puerto Rico*,
  655 F.3d 61 (1st Cir. 2011).....................................................................................................19

*Schaer v. Brandeis Univ.*,
  432 Mass. 474, 735 N.E.2d 373 (2000) ...........................................................................1, 2, 3

*Targus Group, Int'l, Inc. v. Sherman*,
    76 Mass. App. Ct. 421 (2010) ...................................................................16

*Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*,
    534 F. Supp. 340 (D. Mass 1982) .............................................................17

*Trent Partners & Assocs. Inc. v. Digital Equip. Corp.*,
    120 F. Supp. 2d 84 (D. Mass. 1999) ........................................................16

*Williams v. Hobbs*,
    658 F.3d 842 (8th Cir. 2011) ....................................................................20

*Winnick v. Manning*,
    460 F.2d 545 (2d Cir. 1972) .....................................................................14

*Yusuf v. Vassar Coll.*,
    35 F.3d 709 (2d Cir. 1994) .......................................................................17

**Statutes**

20 U.S.C. § 1681(a) ...................................................................................17

**ARGUMENT**

**A.      COUNT I – BREACH OF CONTRACT – 2012 DISCIPLINARY PROCEEDING**

Count I of the Complaint alleges that Boston College ("BC") breached its contractual obligations to John Doe in connection with the 2012 disciplinary proceeding that resulted in Doe's suspension. Doe alleges that BC failed to comply with its stated policies on student conduct, including its promise to provide accused students "due process" and a "fair procedure," thereby breaching express contract terms and the implied covenant of good faith and fair dealing. Complaint ("Compl.") ¶¶ 95-97.

A private university's handling of student discipline is entitled to considerable deference, including the University's interpretation and application of its own rules. *Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 35 (1st Cir. 2007).[1]  A student's breach-of-contract claim thus fails as a matter of law where, as in this case, a university's disciplinary decision was not arbitrary and capricious; the decision was reached through a process that was fundamentally fair; and the university followed its policies and procedures as it would reasonably expect a student to understand them. *Cloud v. Trustees of Boston Univ.*, 720 F.2d 721, 724 (1st Cir. 1983); *Schaer*, 432 Mass. at 478, 735 N.E.2d at 378; *Coveney*, 388 Mass. at 19, 445 N.E.2d at 138-39.

**1.      The Decision Was Not Arbitrary and Capricious.**

"A decision is arbitrary and capricious when it lacks any rational explanation that reasonable persons might support." *City of Cambridge v. Civil Serv. Comm'n*, 43 Mass. App. Ct. 300, 303, 682 N.E.2d 923, 925 (1997). Where there are any "reasonable grounds" to support the finding of a university disciplinary board, it "will not be subject to successful challenge in the courts." *Cloud*, 720 F.2d at 724 (quoting *Coveney*, 388 Mass. at 19, 445 N.E.2d at 139 (1983));

---

[1] *See also Kiani v. Trs. of Boston Univ.*, No. 04–cv–11838, 2005 WL 6489754, at *6-7 (D. Mass. Nov. 10, 2005); *Dinu v. Pres. and Fellows of Harvard Coll.*, 56 F. Supp. 2d 129, 131-33 (D. Mass. 1999); *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316-17 (D. Mass. 1997); *Schaer v. Brandeis Univ.*, 432 Mass. 474, 481, 735 N.E.2d 373, 381 (2000); *Coveney v. Pres. and Trs. of Holy Cross Coll.*, 388 Mass. 16, 19-20, 445 N.E.2d 136, 139 (1983).

1

*Schaer*, 432 Mass. at 479 n.9, 735 N.E.2d at 379 n.9 (rejecting student's contract claim where "[t]here was ample evidence which, if believed, could have supported the board's decision").

The Board's decision had a fully "rational explanation" that was supported by "reasonable grounds."  The female student, "A.B.," submitted a statement and testified that she was groped from behind and that when she turned around to confront her assailant, Doe was alone standing right there, his hands were stretched out towards her waist then went up in the air, and he had a "weird" look on his face.  Statement of Facts ("SOF") ¶ 18. Doe admitted he was in close proximity to A.B. when the assault occurred. *Id.* ¶ 113. He never disputed that an assault occurred, but instead claimed that another student, "J.K.," was the perpetrator. *Id.* ¶ 105. J.K. testified at the hearing and denied assaulting A.B. *Id.* ¶ 103. Nobody, except Doe, testified that they saw J.K. in the vicinity of the incident. *Id.* ¶ 110.  No witness supported Doe's claim that J.K. was the assailant. *Id.* ¶ 111. Doe presented no evidence that exonerated him. *Id.* ¶ 112.

### 2.     The Process Was Fundamentally Fair.

Disciplinary proceedings are "conducted with basic fairness" if the student has notice of the allegation against him and an opportunity to be heard, i.e., to present his version of events and offer supporting evidence. *Cloud*, 720 F.2d at 725; *Kiani*, 2005 WL 6489754, at *8; *Schaer*, 432 Mass. at 481, 735 N.E.2d at 381; *Morris v. Brandeis Univ.*, No. 01-P-1673, 60 Mass. App. Ct. 1119, 2004 WL 369106, *2 (Mass. App. Ct. Feb. 27, 2004).

Doe was afforded a process that easily meets that test. He was given notice of the charge against him well in advance of the hearing at which the charge would be decided. SOF ¶ 53. He had ample opportunity to prepare for the hearing with the assistance of a team of lawyers and a private investigator. *Id.* ¶ 90, 129. He had the opportunity to review in advance the documents that would be introduced at the hearing. *Id.* ¶ 96. The case was heard by a panel of faculty, administrators and a student, which represented a cross-section of the BC community. *Id.* ¶ 71.

The panel afforded Doe a presumption of innocence. *Id.* ¶ 179. In making a decision, the panel understood and applied the preponderance of the evidence standard. *Id.* ¶ 165. The panel understood that it had the option to decide that the evidence did not support any finding. *Id.* ¶ 166. Throughout the hearing Doe was accompanied by and had the opportunity to consult with his attorney. *Id.* ¶ 93. Doe was able to tell his side of the story, call supporting witnesses, introduce supporting exhibits, and cross-examine the complainant and other witnesses by posing questions to be asked by the Board Chair. *Id.* ¶ 102, 98, 121. Doe was notified of the Board's decision, in writing, and afforded the opportunity to appeal the decision on the grounds of procedural error or newly available evidence, which Doe was unable to demonstrate. *Id.* ¶ 190, 194.

The process Doe was afforded thus easily meets the test of "fundamental" or "basic" fairness.[2] Doe's claims that the process was unfair as applied are addressed below.

### 3.    BC Followed its Policies and Procedures.

In determining whether a university has followed its stated policies, the Court applies a standard of "reasonable expectation" – what meaning the university reasonably should understand a student to give to its policies. *Schaer*, 432 Mass. at 478, 735 N.E.2d at 378 (quoting *Cloud*, 720 F.2d at 724).  Doe alleges 13 violations of BC's policies, none of which has merit.

#### a.    Doe had no right to a "threshold evaluation" of his case, much less one that would have allowed him to avoid a hearing altogether.

Doe claims that the Dean of Students or his designee was required to perform a

---

[2]  *Compare Doe v. Brandeis Univ.*, No. CV 15-11557-FDS, 2016 WL 1274533, at *32-37 (D. Mass. Mar. 31, 2016), in which the Court, at the initial pleading stage, determined that the plaintiff had stated a plausible violation of "basic fairness" on alleged facts vastly different from this case.  The accused student in that case allegedly received no notice of the specific allegations against him, was not permitted to consult with his counsel, was not permitted to confront or cross-examine his accuser or other witnesses either directly or indirectly, was not able to view witness statements or other evidence, was denied the opportunity to submit facts and evidence after learning the charges against him; in addition, his case was decided by a special examiner, who did not provide the accused with a copy of the report until the entire proceeding concluded.  *Id.*

"threshold evaluation" of the charge by having a meeting with him in which they "discussed the complaint." Compl. ¶ 98. Doe claims that BC breached this obligation because the Senior Associate Dean who met with him on three occasions, defendant Carole Hughes, refused to listen to his explanation of "what happened the night of the cruise." *Id*. Doe alleges that if Hughes had done so, then instead of "referring the matter to an Administrative Hearing Board," she would have "stay[ed] the school's process until the Suffolk County District Attorney's Office completed its investigation, which ultimately exonerated [him]." *Id*. This claim has no merit.

First, the policy on which Doe relies, the Student Guide, merely states that a student accused of misconduct "will be called by the Dean of Students or designee to discuss the complaint." (Appendix Tab ("Tab") 23, at 2) It is undisputed that Hughes met with Doe on three occasions, in which she informed him of the charge against him, told him that the matter would be referred to an Administrative Hearing Board, allowed him to inspect A.B.'s statement and the other documents that would be introduced at the hearing, and explained the hearing process. SOF ¶¶ 96, 32. During these meetings, Doe said that he was not the perpetrator and that it was a case of "mistaken identity," and Hughes replied that he would be able to present his defense to the Board. *Id.* ¶ 31. It is beyond dispute that Hughes and Doe met and "discussed the complaint."

Second, the Student Guide did not give rise to any reasonable expectation that these meetings would involve a "threshold evaluation" of the merits of the case. The Student Guide provides that the Dean or his designee, "at [her] discretion," may make any number of decisions in relation to the complaint including, as Hughes did here, referring the matter for decision by "an appropriate hearing board." (Tab 23 at 2) The Student Guide does not say or suggest that such a referral can occur only after a "threshold evaluation" of the case. Moreover, the Student Guide provides that allegations of sexual assault may lead to immediate suspension and are to be

"followed within a reasonable period of time…by a conduct hearing." (Tab 23 at 8) It is beyond dispute that no "threshold evaluation" was required where Doe had been arrested and charged with sexually assaulting a fellow student, *Id.* ¶ 20, and that the Administrative Hearing Board was an appropriate forum for Doe's case.

Third, Doe's suggestion that the "only fair and equitable" outcome of a "threshold evaluation" would have been to "stay" BC's process until the dismissal of his criminal case, which "exonerated" him, is absurd. As a matter of both BC policy and compliance with Title IX, BC was obligated to promptly investigate and resolve the claim that Doe had sexually assaulted another BC student; absent extraordinary circumstances, such cases are to be resolved within 60 days. (Tab 22 at 14; Tab 27 at 12) The criminal charge against Doe was not dismissed until May 16, 2014. SOF ¶ 220. The Department of Education specifically discourages universities from awaiting the outcome of criminal charges before completing their own disciplinary process. (Tab 27 at 10) In addition, the outcome of a criminal case is in no way dispositive of whether a violation of university policy has occurred. *See Anderson v. Washington Cty. Sch. Bd.*, No. Civ. A. 86-0053-R(A), 1989 WL 154346, at *1 (W.D. Va. Feb. 28, 1989), *aff'd*, 891 F.2d 286 (4th Cir. 1989). If BC had "stayed" its process until the criminal case against Doe was dismissed, or relied on that dismissal to forego disciplinary proceedings against Doe, it would have violated both Title IX and its contractual obligations to A.B.

### b. Doe's case involved an appropriate investigation by the Board.

Doe alleges that BC breached its obligation to conduct an appropriate investigation because his case should have been investigated by the BC Campus Police, rather than Dean Hughes or the Administrative Hearing Board; Hughes conducted an incomplete investigation; and neither Hughes nor the Board had appropriate training in investigations. Compl. ¶¶ 101-103. The claim fails on all points.

First, BC's policies did not give rise to any reasonable expectation that Doe's case would be investigated by the BC Police. The BC Police do not perform investigations in connection with student conduct proceedings, which are addressed by the Dean's Office. SOF ¶ 44. The BC Police only conduct investigations in connection with criminal cases, *id.*, and even then, investigate only those incidents over which they have primary jurisdiction; where, as in this case, "the incident occurred off campus, the Boston College Police will [only] assist the victim in informing the appropriate municipal police department if he or she so desires." (Tab 22 at 16) Moreover, when asked whether he believed that his case should have been investigated by the BC Police, he said, "I don't know." SOF ¶ 51, admitting that he had no such expectation.[3]

Second, Doe's argument that Hughes was inadequately trained to conduct an investigation, and conducted an incomplete investigation, is a red herring. Hughes never made or purported to make any investigation of the facts. SOF ¶ 37. Indeed, as discussed above, Doe complains that Hughes failed to conduct even a "threshold evaluation" of the case but instead, consistent with BC's policies, simply referred it to the Administrative Hearing Board.  Doe cannot have it both ways. The undisputed fact is that Hughes did not undertake to conduct a factual investigation, but instead left all fact-finding to the Board. SOF ¶ 34.

Third, that fact-finding by the Board was entirely consistent with BC's policies. The Student Guide provides that complaints of sexual misconduct "will be investigated and adjudicated in accordance with the Student Conduct System policies and procedures, as described in Section 5" of the Guide. (Tab 22 at 12) Section 5 provides that, "the function of the [disciplinary] proceedings is to investigate the facts of the matter and to determine responsibility

---

[3] Moreover, Doe and his legal team were fully aware at the time that the "investigation" of his case would be conducted by the Administrative Hearing Board, and not by the BC Police or Dean Hughes; they made no objection at the time; nor did Doe raise this procedural objection in his appeal. These procedural objections thus are waived. *See Nash v. Auburn Univ.*, 812 F. 2d 655, 661-62 (10th Cir. 1987).

for alleged violations." (Tab 23 at 1) Moreover, as discussed above, an Administrative Hearing Board is the appropriate forum for such "proceedings."

Finally, there is no merit to Doe's claim that the Board lacked adequate training to properly investigate the facts. The Board members all received annual training, which included training in how to ask questions and evaluate the evidence in matters involving allegations of sexual assault and they had ample experience on prior boards. SOF ¶¶ 73-86. Plaintiffs will note that an internal review of BC's Title IX policies in 2012 stated, "Based on best practices, the training for a hearing board such as ours is insufficient. A comprehensive training for all hearing board members is recommended to last two days and cover a wide array of topics to assure a fair process as outlined in Title IX." This observation creates no triable issue of fact as to whether the Board in Doe's case had adequate training to address the straightforward issues in that case. No special training was required to investigate the allegation for which Doe ultimately was found responsible – the inappropriate touching of another student on a dance floor. Investigating those facts merely involved weighing the accounts of A.B., Doe, and the other witnesses, in the same manner that university hearing boards regularly decide a wide range of student conduct allegations. Nothing about this charge of inappropriate touching depended upon the evaluation of any scientific or forensic evidence, nor did it require the Board to resolve any other issues – such as consent, or incapacitation – that might call for the heightened level of training that was emerging as "best practices" for the most difficult sexual assault cases.

> c.     **BC set a fair and reasonable hearing date.**

Doe alleges that BC breached its contractual obligation by failing "to act reasonably in the scheduling of a hearing," by which he means scheduling a hearing without allowing "time for the criminal investigation to be completed." Compl. ¶¶ 107-08. Doe had no reasonable expectation that the hearing in his case would be postponed until after the criminal investigation

was completed. The incident occurred on October 20-21, 2012. SOF ¶ 12. The Student Guide, consistent with Title IX, provides that "[t]he University will make every reasonable effort to resolve the complaint within 60 days." (Tab 22 at 15; Tab 27 at 12) The hearing began on November 8 and concluded on November 16, 2012, SOF ¶ 65, and Doe's appeal was decided on December 7, 2012. *Id.* ¶ 209. The criminal case was not dismissed until May 16, 2014, *Id.* ¶ 220, more than 570 days after the incident. If BC had waited that long to address A.B.'s complaint, it would have violated Title IX and its contractual obligations to A.B.

Moreover, the Student Guide provides that when a complainant "proceeds with both a disciplinary complaint and a criminal complaint, the University conduct process will normally proceed while the criminal action is in process." (Tab 22 at 16) The Guide allows the Dean to stay the conduct process if the student remains on summary suspension while the criminal process is ongoing, *id.*, but Doe never pursued that option. He chose instead to go forward with the hearing process, hoping that the Board would find in his favor, which would allow him to return to school and graduate on time with his class. Having made that choice, he cannot now be heard to complain that BC went forward with the hearing in accordance with its normal process.

### d.  Doe had entirely fair and reasonable notice of the charges.

Doe alleges that he did not receive fair notice of the charge that resulted in his suspension because the hearing notice said he was being charged with "sexual assault," whereas he was found responsible for the lesser inclusive offense of "indecent assault and battery," which is "nowhere defined" in BC's policies. Compl. ¶¶ 111-112. In fact, Doe was found responsible for "sexual assault: indecent assault and battery." SOF ¶ 189. The argument is specious in any event.

Doe knew from the outset what A.B. had accused him of doing – that he reached under her skirt, ran his hand along her buttocks, and digitally penetrated her anus. SOF ¶ 17. Her allegations were set forth in detail in the statements she gave to the police and the statement she

prepared for the hearing, all of which was provided to Doe before the hearing. SOF ¶ 96. Thus, Doe knew from the outset that A.B. was accusing him of **both** indecently touching her buttocks **and** digitally penetrating her anus.  Moreover, BC's policies prohibit "all forms of sexual harassment, sexual assault, and sexual misconduct," including "non consensual sexual contact" of any kind. (Tab 22 at 12) Doe knew that inappropriately touching a person's buttocks was "wrong" and "indecent." SOF ¶ 57.[4]

As noted above, the hearing notice informed Doe that he was being charged with "sexual assault." The Hearing Board was not convinced that Doe digitally penetrated A.B.'s anus, but they did find it more likely than not that Doe inappropriately touched A.B.'s buttocks. SOF ¶ 173. Accordingly, he was found responsible for "sexual assault: indecent assault and battery." *Id.* ¶ 186. BC's policies provide that a student conduct proceeding can include a finding of responsibility for a "lesser inclusive charge." Compl. ¶ 111; Tab 23 at p. 4.

Doe thus cannot be heard to argue that he lacked "fair and meaningful notice" of the charge for which he was found responsible. Moreover, Doe admittedly cannot say that he would have presented his case any differently "if only he had known" that he might be found responsible for inappropriately touching A.B.'s buttocks without penetration. SOF ¶ 59.

### e.    Doe had the assistance of counsel per BC's policies.

Doe alleges that BC unfairly prevented his attorney from questioning witnesses, addressing the Board or otherwise speaking, except for conferring with Doe. Compl. ¶ 115. Doe had no reasonable expectation to the contrary. The Student Guide makes clear that while the student and advisor can confer "at any point during the hearing," the advisor may not "address the Board or act in any advocacy capacity at the hearing." (Tab 23 at 5)

---

[4] When asked whether a student's act of reaching under a woman's skirt and groping her buttocks would have been considered an act deserving discipline by Boston College, Doe said, incredibly, "I'm not sure I am entitled or know enough to have an opinion on that, whether it should or should not be." SOF ¶ 58.

Doe's claim that BC's rules thus denied him "due process and fundamental fairness" are without merit. As a private university, BC was not required even to allow counsel to be present at a student disciplinary hearing, much less required to allow counsel to participate as an advocate on the student's behalf. *Coveney*, 388 Mass. at 22, 445 N.E.2d at 140. *See also Gabrilowitz v. Newman*, 582 F.2d 100, 106 (1st Cir. 1978) (even at a public institution, due process does not require that attorneys be permitted to speak with anyone but their client).

### f.   The Board properly excluded testimony by Doe's private investigator

Doe alleges that BC breached its procedures and acted unfairly when the Board refused to permit his private investigator to testify at the hearing. Compl. ¶¶118-120. The investigator was prepared to testify as to "two important matters" – an October 22 telephone call between Doe and J.K., which Doe made from his attorney's office while the investigator secretly listened in, and the investigator's October 29 interview with J.K. SOF ¶ 132. Doe contends that the investigator would have testified to statements J.K. made in these conversations which supported Doe's claim that it was J.K. who assaulted A.B. Compl. ¶ 75.

The Board decided not to permit the investigator to testify for several reasons, all of which are consistent with BC's policies and basic fairness. First, a student is required to identify his witnesses to the Dean's Office at least 48 hours in advance of the hearing and Doe failed to do that. SOF ¶¶ 130-131. Doe identified his private investigator as a witness in an email to Hughes at 11:21 p.m. the night before the hearing was to begin. *Id.* Other than seeking to gain an unfair advantage, Doe had no reason to disclose his investigator at the last minute, as the subject of his testimony was going to be conversations that had occurred many days earlier. Second, the Student Guide provides that "witnesses should be able to speak to the facts of the incident which they have witnessed" (Ex 13, p. 6), and the Board reasonably construed this rule to mean that a witness must have witnessed the incident at issue – i.e., the assault. SOF ¶ 137. Third, the Board

determined that the investigator had no evidence to offer that the Board could not obtain from others who were directly involved in the events at issue: both Doe and J.K. could testify to the phone conversation between them on October 22, which the investigator merely listened to, and both Doe and J.K. could address the October 29 conversation between J.K. and the investigator, J.K. could give his account of it, and Doe could cross-examine him through the Board. *Id.* ¶¶ 138-139. Fourth, although the Board would not permit the investigator to testify, the Board told Doe and his counsel that they could submit a written statement from the investigator, which could have included any and all information as to which the investigator would have testified. *Id.* ¶ 140. Doe did not to submit a statement to the Board. *Id.* ¶ 141.

The Board thus acted in a manner entirely consistent with BC's policies and basic fairness. Doe cannot identify any facts that the investigator would have provided that the Board did not already have and thus cannot say how the outcome would have changed had the investigator been permitted to testify. SOF ¶ 146.

### g.   There is no evidence of bias.

Doe alleges that BC breached its contractual obligations to him and denied him a fundamentally fair process because he was subjected to a disciplinary process and tribunal that were biased against him. Compl. ¶¶ 121-126. The claim fails for the simple reason that there is no evidence to support it, only Doe's unfounded speculation. *See Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 15 (1st Cir. 1988) ("Alleged prejudice of university hearing bodies must be based on more than mere speculation and tenuous inferences."); *Ikpeazu v. Univ. of Nebraska*, 775 F.2d 250, 254 (8th Cir. 1985) (university disciplinary officials "are entitled to a presumption of honesty and integrity unless actual bias, such as personal animosity, illegal prejudice, or a personal or financial stake in the outcome can be proven").

Doe claims that Deans Chebator and Hughes were biased against him, citing as supposed

11

evidence the above litany of alleged procedural improprieties and "unfairness" in connection

with the disciplinary process, such as Hughes's failure to conduct an investigation, refusal to

hear his side of the story, and scheduling of a hearing before the conclusion of the criminal

investigation. Compl. ¶ 122. These allegations are without merit, for the reasons described

above, and the fact that Doe is subjectively unhappy with BC's handling of his case does not

support a claim of bias. Nor is there any evidence that any views that Hughes or Chebator may

have held had any influence on the Board that decided Doe's case. Neither Hughes nor Chebator

participated in the deliberation or had any role in deciding Doe's responsibility. SOF ¶ 176.

Also without merit are Plaintiffs' subjective, self-serving assertions that Hughes treated

Doe "like a contemptible criminal," Compl. ¶ 122, and that the Board Chair, Catherine-Mary

Rivera, acted like a "prosecutor" and was "overtly hostile" to Doe. Compl. ¶ 123. Here, too, the

allegations amount to nothing more than dissatisfaction with how BC's officials did their jobs, as

distinct from evidence of some personal animosity toward Doe, unlawful prejudice, or personal

stake in the outcome of the case. *Ikpeazu*, 775 F.2d at 254.

Doe's other allegations of bias on the part of the Hearing Board similarly amount to

nothing more than "speculation and tenuous inferences." *Gorman*, 837 F.2d at 15. Doe

complains that one Board member, Williams Mills, serves as BC's Director of Community

Affairs, which involves (among other things) working with local police and town officials in

connection with off-campus incidents involving students. Compl. ¶ 123; SOF ¶ 212. Nothing

about those responsibilities remotely suggests, much less demonstrates, any bias against Doe.

*See Gorman*, 837 F.2d at 15 (noting that university disciplinary officials may wear many hats).

Doe complains that another Board member, BC law professor Norah Wylie, served on the Board

of Directors of an organization "dedicated to the elimination of violence against women."

12

Compl. ¶ 123. Such an affiliation is "plainly insufficient" to infer any bias against Doe or male respondents generally. *See Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 371 (S.D.N.Y. 2015) (university official's prior work for a women's resource center did not support a claim of bias).

> **h.    Doe's case was heard by a trained, competent tribunal.**

Doe's claim that BC failed to afford him an Administrative Hearing Board that was competent and adequately trained, Compl. ¶ 127, is entirely without merit. The Student Guide provides that all conduct board members will be trained by the Office of the Dean of Students and that chairpersons for Administrative Hearing Boards will receive additional training in relation to their duties as chair. (Tab 23 at 4) That is exactly what happened. All of the Board members received annual training – not only the general training provided to all Board members, but also additional training specific to sexual assault cases – and Rivera received the additional training for Board chairs. SOF ¶ 76. Moreover, the Board members in this case had strong experience, both as to the overall number of panels on which they had served and as to prior service in cases involving allegations of sexual assault. *Id.* ¶¶ 80-86.

> **i.    Doe was presumed innocent and did not have the burden of proof.**

Doe alleges that BC breached its obligation to presume him innocent and to assume the burden of proof at his hearing. Compl. ¶¶ 130-132. No evidence supports that claim. The Board members all testified that Doe was presumed innocent, that the burden of proof was not on Doe to prove his innocence, and that they were unanimous in concluding that a preponderance of the evidence supported a finding that Doe indecently assaulted A.B. SOF ¶¶ 161, 179.

> **j.    The evidence amply supported the Board's decision.**

Doe's claim that the evidence did not support the Board's decision, Compl. ¶¶ 133-138, fails for the reasons stated in Section A.1. above.

**k.      BC had no obligation to record the hearing.**

Doe's claim that BC was obligated to record the hearing. Compl. ¶ 139, has no basis.

BC's policies provide that neither party will be allowed to record the hearing by any means

without the advance permission of the Dean. (Tab 23 at 5) It is undisputed that Doe and his legal

team never made any such request, SOF ¶ 99, thereby waiving the issue. *See supra* n.3; *see also*

*Gorman*, 837 F.2d at 16 ("due process" does not require the recording of a student disciplinary

hearing, even at a public institution).

**l.      Doe had the right to request an appeal, which was handled fairly and
         in accordance with BC's policies.**

Doe complains that the appeal process, as provided in the Student Guide and as applied in

his case, failed to meet BC's contractual obligations and was unfair. Compl. ¶ 141-146.

Universities need not provide any right to appeal a student disciplinary decision. *Winnick v.*

*Manning*, 460 F.2d 545, 549 n.5 (2d Cir. 1972); *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d

6, 41 (D. Me. 2005). It follows that when universities provide for an appeal, they can limit the

grounds for appeal, and where a university expressly limits an appeal to procedural grounds, a

student has no expectation of a review of the merits of the case. *Gomes*, 365 F. Supp. 2d at 41.

BC's Student Guide provides for an appeal if a student can "demonstrate that he or she

has been denied a fair hearing of the case due to procedural unfairness or can introduce evidence

not previously available that would be likely to change the result of the prior hearing." (Tab 23 at

7). If the student makes that showing, the appeal is granted and the case is re-heard *de novo*. (*Id.*;

Tab 24) Doe's request for an appeal did not make this showing and was denied. SOF ¶ 209.

Doe complains that Chebator should not have been involved in the appeal because of his

"involvement throughout the disciplinary process." Compl. ¶ 142. That involvement was limited

to returning a telephone a call from A.B.'s father, explaining to Hughes the general direction the

14

proceeding should take, receiving reports on the status of the proceeding, and after the Board had

reached its decision, participating in the discussion of how to characterize the conduct violation.

SOF ¶ 198. The fact that Chebator knew something about the case and wore multiple

administrative hats did not violate any BC policy, nor did it violate any principle of fairness. *See*

*Gorman*, 837 F.2d at 15; *Cloud*, 720 F.2d at 726; *Coveney*, 388 Mass. at 22, 445 N.E.2d at 140.

Doe also argues that defendant Patrick Keating, the Interim Vice President of Student

Affairs, simply followed Chebator's recommendations with respect to the appeal, and did not get

involved "in all of the details of the case." Am. Compl. ¶ 83a. The evidence is that Chebator took

the laboring oar in determining whether there was any procedural unfairness in the handling of

Doe's case and whether Doe had presented any new evidence, not previously available, that

could change the outcome. SOF ¶ 199.[5] He determined there was not; he prepared a draft letter to

Doe explaining why the standard for an appeal had not been met; and then he reviewed his

findings and the draft letter with Keating. SOF ¶ 205. Keating also consulted with BC's General

Counsel Joseph Herlihy about the standard and process for handling such an appeal. SOF ¶ 206.

Nothing about this violates BC's rules or any principle of basic fairness.

The Student Guide does not specify what steps the Dean or Vice President for Student

Affairs must take in deciding an appeal. (Tab 23 at 7) It states only that "[t]he Dean and the Vice

President (or their delegated representatives) will review the case and determine if the new

evidence or lack of a fair hearing requires consideration." (*Id*.) The Student Guide creates no

reasonable expectation that Keating would review "all of the details of the case."

Doe also alleges that Chebator and Keating lacked the necessary training to serve as

---

[5] Doe complains that Chebator consulted with Rivera on these issues and asked her to review the draft appeal
decision. Compl. ¶ 145. That only made sense, as the Chair was in the best position to know what procedures were
followed and whether any "new" evidence might change the outcome. *See Havlik*, 509 F.3d at 35. Moreover,
nothing in the Student Guide dictates with whom the appellate officers or their designees can speak. (Tab 23 at 13)

appellate officers. Compl. ¶ 144. No special training is needed to decide whether BC's

procedures have been followed or whether Doe had proffered any new evidence that could make

a difference. Keating and Chebator both were familiar with BC's policies and procedures relating

to allegations of sexual assault; Chebator had extensive experience in student disciplinary

matters, including service on hearing boards and handling appeals, and extensive training in

student conduct, sexual assault cases, and Title IX. SOF ¶ 208. Their training and experience did

not violate Doe's reasonable expectations or any principle of basic fairness.

**B.      COUNT II – PROMISSORY ESTOPPEL**

Doe's promissory estoppel claims are duplicative of his breach of contract claims and

thus fail for the reasons stated above.[6]

**C.      COUNT III – BREACH OF CONTRACT – 2014 REVIEW**

Plaintiffs allege that BC entered into an enforceable contract when BC's President, Father

William Leahy, told Doe's father in 2014 that he would instruct Barbara Jones, the Vice

President of Student Affairs, to conduct a further review of Doe's case. Compl. ¶¶ 153-156. An

enforceable agreement requires (1) terms that are "sufficiently complete and definite" and (2) an

intention on the part of both the parties, at the time of the agreement, to be bound by those terms.

*Targus Group, Int'l, Inc. v. Sherman*, 76 Mass. App. Ct. 421, 428 (2010). As is evident from the

parties' written correspondence, no such contract was formed. SOF ¶¶ 224-234. The exchange

between Father Leahy and James Doe does not contain "sufficiently complete and definite"

terms as to what this further review would involve, including what facts would be re-examined,

what standard would be applied, and what the outcome – if any – might be. *Id.* Indeed, Father

---

[6] Moreover, where a written contract governs the same subject matter, recovery under a quasi contract theory is not available. *Trent Partners & Assocs. Inc. v. Digital Equip. Corp.*, 120 F. Supp. 2d 84, 104-05 (D. Mass. 1999); *see also Brown Univ.*, 2016 WL 715794, at *15; *Doe v. Brandeis Univ.*, No. 15-cv-11557-FDS, 2016 WL 1274533, at *41 (D. Mass. Mar. 31, 2016).

Leahy left it entirely to Dr. Jones's discretion as to how she would conduct the review and by what standard. *Id.* ¶ 229. Plainly there was no meeting of the minds with Mr. Doe about that. Summary judgment is proper where, as here, the evidence shows that no contract was formed.

**D.   COUNT IV – COMMON LAW DUTY OF BASIC FAIRNESS**

There is no independent cause of action for "failing to provide basic fairness" in connection with a university disciplinary proceeding. Moreover, as discussed above, BC afforded Doe more than "basic fairness" in this case.

**E.   COUNT XIV – UNJUST ENRICHMENT**

Unjust enrichment is the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass 1982). BC has not been unjustly enriched.  BC did not act unjustly for the reasons discussed above, and Plaintiffs did not pay any more to BC than they would have paid had Doe not been suspended. SOF ¶ 223.[7]

**F.   COUNT VI – "ERRONEOUS OUTCOME" UNDER TITLE IX**

Title IX prohibits discrimination on the basis of sex in any educational program or activity that directly or indirectly receives Federal financial assistance.  20 U.S.C. § 1681(a). Plaintiffs contend that BC violated Title IX because gender bias against male respondents in sexual assault cases resulted in an "erroneous outcome" in his case. Compl. ¶¶ 168-182.

"Under the 'erroneous outcome' standard, the question is whether the College's actions are 'motivated by sexual bias' or if the 'disciplinary hearing process constitutes a 'pattern of decision-making' whereby the [College's] disciplinary procedures governing sexual assault claims is 'discriminatorily applied or motivated by a chauvinistic view of the sexes.'" *Bleiler v.*

---

[7] Moreover, assuming for the sake of argument that there was merit to Plaintiffs' claims, they have an adequate remedy at law in the form of their contract claims, and thus an equitable claim for unjust enrichment is not available. *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329, 833 N.E.2d 171, 176 (2005).

*Coll. Of Holy Cross*, No. 11-11541, 2013 WL 4714340, at *5 (D. Mass. Aug. 26, 2013) (citing

*Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994); *Doe v. Univ. of the S.*, 687 F. Supp. 2d

744, 756 (E.D. Tenn. 2009); *Mallory v. Ohio Univ.*, 76 Fed. Appx. 634, 640 (6th Cir. 2003)).

"Demonstrating that a university official is biased in favor of the alleged victims of sexual

assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias

against male students."  *Salau v. Denton*, No. 2:14-CV-04326-SRB, 2015 WL 5885641 (S.D.

Mo. Oct. 8, 2015).

    The evidence in this case fails to create any triable issue of fact with respect to gender

bias, as plaintiffs' claims are based on sheer speculation, not "competent evidence" or "specific

facts."  *Bleiler*, 2013 WL 4714340, at *5 (citations omitted). Plaintiffs have adduced no direct

evidence of gender bias on the part of the Board, or any BC administrator for that matter.  Nor

have they adduced any indirect evidence of systemic gender bias. To the contrary, BC's policies

concerning sexual assault are entirely gender neutral (Tab 22 at 11-16), and the evidence shows

that roughly a third of all male students accused of sexual assault are ***not*** found to be responsible

in campus disciplinary proceedings. SOF ¶ 210.[8] *See Bleiler*, 2013 WL 4714340, at *8 (holding

fact that one-third of male students are found not responsible precludes finding of gender bias).

Simply put, Plaintiffs have adduced no evidence of any university official being pressured by the

supposed "campus rape culture" or guidance from the Department of Education to "convict all

male students." (Compl. ¶¶ 179-180) BC accordingly is entitled to summary judgment on Doe's

erroneous outcome claim.

## G.    COUNT VII – "DELIBERATE INDIFFERENCE" UNDER TITLE IX

    Plaintiffs also contend that BC violated Title IX because several administrators who had

---

[8] The fact that only male students have been accused of sexual assault at BC is a product of the fact that victims at BC have only accused male students. The accusers, not the school determines the pool of accused students.

"actual notice" of "misconduct", relating to Doe's disciplinary case (Father Leahy, Jones, and Keating) were "deliberately indifferent" to the outcome as a result of gender bias. Compl. ¶¶184-191. "[D]eliberate indifference claims are typically brought in cases where a school has ignored a victim's complaint of sexual harassment or assault." *Doe v. Brown Univ.*, No. CV 15-144 S, 2016 WL 715794, at *10 (D.R.I. Feb. 22, 2016); *see also Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 WL 1179955, at *8 (S.D. Ohio Mar. 13, 2015).  Moreover, the traditional deliberate indifference standard, "demands that a funding recipient be shown to have had actual knowledge of the harassment." *Santiago v. Puerto Rico*, 655 F.3d 61, 73 (1st Cir. 2011) (citations omitted). Failing "to comply with [Title IX] regulations" in the handling of conduct proceedings, as Plaintiffs allege in this case, "does not establish the requisite actual notice and deliberate indifference." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291-92 (1998); *see also Doe v. Univ. of the S.*, 687 F. Supp. 2d  at 758 (dismissing deliberate indifference claim where "misconduct" at issue was university's alleged failure to comply with Title IX regulations); *Karasek v. Regents of the Univ. of Cal.*, No. 15-cv-03717, 2015 WL 8527338, at *13 (N.D. Cal. Dec. 11, 2015) (noting that the Department of Education's Dear Colleague Letter "does not define what amounts to deliberate indifference.").

Because Doe has not been subjected to sexual harassment, he has no claim under the deliberate indifference standard. *See Doe v. Univ. of the S.*, 687 F. Supp. 2d at 757-58. In addition there is no evidence that Leahy, Jones, or Keating had "actual knowledge" that Doe was being discriminated against in connection with his disciplinary case because he was male.

## H.    COUNT V – DECLARATORY JUDGMENT

Doe seeks a declaratory judgment that BC's disciplinary procedures in 2012-2013 failed to comply with the Department of Education's Title IX regulations. Compl. ¶¶ 161-167. The claim fails because there is no private right of action for violating those regulations. *Gebser*, 524

U.S. at 291-92; *Doe v. Univ. of the S.*, 687 F. Supp. 2d at 758. Doe cannot end-run his lack of

standing to assert such a claim in the guise of seeking a declaratory judgment. *See Jones v.*

*Hobbs*, 745 F. Supp. 2d 886, 892 (E.D. Ark. 2010) ("The availability of relief under the

Declaratory Judgment Act 'presupposes the existence of a judicially remediable right.'"), *aff'd*

*sub nom.*, *Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011).

Doe's claim for declaratory relief also is improper because he no longer is a student at

BC, SOF ¶ 260, and is seeking a declaration of liability for past acts. *See Aldrich v. Young*, No.

CA 13-10466-DPW, 2013 WL 3802436, at *9 (D. Mass. July 18, 2013) ("Declaratory relief

applies only to prospective relief, to define legal rights in connection with future conduct."); *see*

*also Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008).

## I.   COUNTS VIII-XIII – NEGLIGENCE AND EMOTIONAL DISTRESS CLAIMS

BC incorporates by reference the arguments as to these counts in the Memorandum in

Support of the Individual Defendants' Motion for Summary Judgment.

### CONCLUSION

The Court should grant summary judgment to BC on all counts.

TRUSTEES OF BOSTON COLLEGE,
/s/ Elizabeth H. Kelly
Daryl J. Lapp (BBO No. 554980)
   daryl.lapp@lockelord.com
Elizabeth H. Kelly (BBO No. 672277)
   liz.kelly@lockelord.com
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA 02199
May 16, 2016                                   617.230.0100

### Certificate of Service

This document was served electronically upon all counsel of record by filing
through the ECF system on May 16, 2016.
/s/ Elizabeth H. Kelly
Elizabeth H. Kelly

AM 57760686.4