UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> TRUSTEES OF BOSTON COLLEGE, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 15-10790-DJC <br> ) <br> ) <br> ) <br> ) <br> ) |

## JOINT STATEMENT PURSUANT TO COURT'S JULY 19, 2018 ORDER

Pursuant to the Court's July 19, 2018 order (Dkt. 101), counsel for the parties have conferred concerning (1) how to proceed in light of the First Circuit's June 8, 2018 opinion; and (2) a proposed schedule. The parties have significantly different views as to these matters, which are summarized below.

### A. Plaintiff's Position

#### 1. The Claims Remaining to Be Tried and How They Should be Tried

The First Circuit has remanded plaintiff John Doe's breach-of-contract claim (Count I) for a jury trial, specifically the alleged breaches relating to (1) interference with the deliberations of the Administrative Hearing Board ("Board"); and (2) the preclusion of John's alternative culprit defense:

- "[A] reasonable jury could resolve [the factual] dispute" concerning the alleged "interfer[ence] with the Board's" deliberations by the University's administrators.[1]

---

[1] *Doe v. Trustees of Boston College*, 892 F.2d 67, 86 (1st Cir. 2018).

- "Whether or not [Dean] Hughes' directive to her subordinate about talking to [Board Chair] Rivera on how the Board might put J.K. at ease breached Doe's reasonable expectation that B.C. would provide him 'a fair procedure' is, on this opaque record, a material fact with regard to the Does' breach of contract claim that should be resolved by the jury."[2]

The First Circuit also remanded for trial John's claim (Count IV) that the University violated its obligation to conduct the 2012 and 2014 disciplinary processes with basic fairness, which the First Circuit held to be "an independent duty to provide basic fairness."  892 F.3d at 87.  As with the breach-of-contract claim, the basic fairness claim presents "genuine issues of material fact" that must be resolved by the jury.  *Id.* at 88.

John disagrees with the University's position set forth below.  The fact that John seeks both injunctive relief and monetary relief does not require any sort of bifurcation of the proceedings.  As the First Circuit stated – and as the Seventh Amendment guarantees – John is entitled to a jury trial.

The elements of damages to which John is entitled if he prevails were detailed for the Court in his summary judgment papers (Dkt. No. 66) and are repeated for the Court's convenience here:

The measure of damages for a university's breach of contract in a sexual assault case such as this one includes (1) "expenses incurred during the suspension"[3]; (2) "lost earnings as a result of the delay in graduation"[4]; (3) diminished "earning potential"[5]; (4) the "reputational

---

[2]  *Id.* at 87.

[3]  *Benning v. Corp. of Marlboro Coll.*, 2014 WL 3844217, at *3 (D. Vt. 2014).

[4]  *Id.*

[5]  *Id.; Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 607 (university's unlawful conduct will "permanently scar [student's] career").

cost" of the suspension[6]; and (5) the "emotional cost" of the suspension.[7]   In general, the damages are designed to put the injured student "in as good a position as he would have been if had the contract been performed."[8]

John has suffered each of these elements of damages and will prove the amounts of each at trial.  With regard to each:  (1) he has incurred expenses during, and as a result of, his suspension – lost tuition for the fall 2012 semester in the amount of $21,570 as well as the unused portion of the sums that were paid for his room, board, and fees for that semester[9]; (2) lost earnings as a result of the delay in graduation[10]; (3) diminished earning potential[11]; (4) reputational injury[12]; and (5) emotional injury.[13]

## 2. Expert Witnesses

On June 9, 2016, plaintiffs filed an unopposed motion to extend expert discovery for a limited purpose, *i.e.*, to allow defendants to take the deposition of one of plaintiffs' experts, Mila Tecala, who had been hospitalized with a serious illness and had an uncertain prognosis.

---

[6]   *Benning*, 2014 WL 3844217, at *3; *Brandeis*, 177 F. Supp. 3d at 602, 607 ("reputational injury" caused by "stigmatization as a sex offender"; convicted student faces "substantial public condemnation and disgrace").

[7]   *Benning*, 2014 WL 3844217, at *3; *Brandeis*, 177 F. Supp. 3d at 602, 607 (convicted student faces "substantial social and personal repercussions" and university's unlawful conduct will "permanently scar [student's] life").

[8]   *Benning*, 2014 WL 3844217, at *3 (quoting Restatement (Second) of Contracts § 344 (1979)). Massachusetts courts follow this Restatement provision.  *E.g.*, *Situation Mgt. Sys., Inc. v. Malouf, Inc.*, 724 N.E.2d 699, 704 (Mass. 2000).

[9]   *See* Ex. A to Dkt. No. 66.

[10]   These lost earnings due to delay are quantified in the expert report of Steven D. Shedlin (Ex. B) and reduced to present value in the expert report of Joel N. Morse (Ex. C) (without exhibits).

[11]   See Shedlin and Morse expert reports.  See also expert report of Richard A. Greenberg (Ex. D) (concerning the effect of the University's conduct on John Doe's ability to become a member of the bar).

[12]   See Shedlin, Morse, and Greenberg expert reports.

[13]   See expert report of Mila Tecala (without exhibits ) (Ex. E).

Dkt. No. 79.  On June 16, the Court granted the motion "only to the extent it seeks an extension to take the deposition of Mila Tecala or a substitute."  Dkt. No. 80.  On July 12, plaintiffs filed a status report informing the Court that (1) Ms. Tecala died on June 24; and (2) plaintiffs intended to designate a substitute expert witness.  Dkt. No. 85.  The Court's summary judgment ruling made the designation of a substitute expert witness unnecessary.

In light of the First Circuit's opinion and remand for trial, plaintiffs intend to designate a substitute expert witness.  In addition, some or all of plaintiffs' other expert witnesses may, given the passage of time, need to prepare supplemental reports.

## B.  Defendant's Position

### 1.  The Claims Remaining to Be Tried and How They Should Be Tried

The First Circuit reversed this Court's summary judgment decision only with respect to (1) John Doe's breach of contract claim in Count I with respect the 2012 disciplinary proceeding and (2) Doe's "basic fairness" claim in Count IV, but only with respect to the 2012 proceeding – not with respect to the 2014 review of that proceeding.[14]   The First Circuit, like this Court, addressed the basic fairness claim as a matter of contract law.  It noted that where, as in this case, a university promises basic fairness, the Court's analysis "focuses on assuring compliance with this contractual promise."  892 F.3d at 88.  The First Circuit ruled that "[b]ecause there are genuine issues of material fact on the Does' breach of contract claim for **the 2012 disciplinary proceedings,** … summary judgment on the Does' basic fairness claim was also inappropriate.  Therefore we also vacate and remand **on this issue"** – i.e., basic fairness with respect to the 2012 proceeding.  Id. (emphasis supplied).  With respect to the 2014 review, the First Circuit ruled otherwise.  It affirmed summary judgment for Boston College on the contract claim with respect

---

[14]  The Complaint asserted several counts as to John Doe only and others as to both Doe and his parents.  The remaining claims, in Counts I and IV, are asserted only as to Doe.

to the 2014 review because there was no enforceable promise between the parties with respect to that review.  Id. at 89.  Consistent with that ruling, the Court did not remand the basic fairness claim with respect to the 2014 review.  Where there was no obligation to conduct that review at all, there cannot have been an obligation to conduct the review in with "basic fairness."

Accordingly, all that remains to be tried on liability is the question whether either or both of two communications with the Hearing Board chair – one to the effect that the Board should put J.K. "at ease" and to the effect that a "no finding" was permitted but disfavored – involved improper interference with the Board's consideration of Doe's case, thereby violating Doe's reasonable expectations or denying him basic fairness with respect to the 2012 proceedings.  Id. at 86-87.

These issues should be tried to the Court without a jury.  Doe seeks equitable relief – an order enjoining the College to vacate the 2012 finding against him and the record of his suspension – which of course is a matter for the Court, not the jury.  Moreover, if that relief is granted, Doe's further remedy at that point is not an award of money damages but instead a new hearing at the College.  The case law is consistent on this point:  where a student who was disciplined by his college can show a violation of his contractual or "due process" rights which affected the outcome of his disciplinary hearing, the proper remedy is an order enjoining the college to vacate the finding and remanding the matter to the college for a new hearing in accordance with the student's rights.[15]  The only exceptions to this general rule are not relevant

---

[15]  *See, e.g., Anderson v. Massachusetts Inst. of Tech.*, No. 940348, 1995 WL 813188, at *1 (Mass. Super. Jan. 31, 1995); *Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 586 (E.D. Va. 2016); *Doe v. Alger*, No. 5:15-CV-00035, 2017 WL 1483577, at *1 (W.D. Va. Apr. 25, 2017); *Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 346–47 (D.R.I. 2016); *Furey v. Temple Univ.*, 884 F. Supp. 2d 223, 261 (E.D. Pa. 2012); *Univ. of Texas Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 933–34 (Tex. 1995); *Clayton v. Trs. of Princeton Univ.*, 519 F. Supp. 802, 811 (D.N.J. 1981).

here – if the student can demonstrate that it would be impossible for him to receive a fair hearing on remand, or if the original decision by the college was in the student's favor but then was reversed by the college in violation of the student's rights.[16]

Accordingly, the Court should proceed with a bench trial on the question whether there was improper interference with the Hearing Board's consideration of Doe's case which affected the outcome of the 2012 proceeding.  If the Court finds there was not, then it will enter judgment in the College's favor on the contract and basic fairness claims.  If the Court finds that there was, then the matter would be remanded to the College to conduct a new hearing which meets Doe's contractual expectations and affords him basic fairness.   If that process affirms the original outcome – Doe is found responsible and a suspension is deemed the appropriate sanction – then Doe has suffered no harm as a result of the original outcome and he never gets to a jury trial on the issue of damages.  Only if Doe prevails at a second hearing at the College would he then get a jury trial on the measure of damages resulting from the outcome of the 2012 proceeding.

In the event a trial on damages is reached, Doe can recover only those damages that would compensate him for any economic loss resulting from having been suspended improperly – i.e., the economic loss associated with the one-year delay in obtaining his undergraduate degree and any impact on Doe's employment opportunities and earnings.  Doe cannot recover damages for his claimed emotional distress and harm to reputation.  Such damages are not

---

[16]  *See e.g., Anderson v. Massachusetts Inst. of Tech.*, 1995 WL 813188, at *1; *Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d at 586; *Clayton v. Trs. of Princeton Univ.*, 519 F. Supp. at 811.

recoverable on a breach of contract claim under Massachusetts law, except in rare circumstances not applicable here.[17]  Those same contract law principles apply to Doe's basic fairness claim.

### 2. Expert Witnesses

As discussed above, all that remains to be tried on liability, in light of the First Circuit's decision, is the narrow question whether either or both of two communications from the Dean's office interfered with the Hearing Board's consideration of Doe's case, thereby defeating his contract expectations or denying him basic fairness.  These are narrow, strictly factual issues, the resolution of which will turn entirely on the testimony of the five Panel members.  Plaintiff identified a liability expert, Brett Sokolow, who is prepared to opine that the communications at issue interfered with the Board's decision.  The College will seek to exclude Sokolow's opinion.

With respect to the damages experts, the Court should establish a schedule for supplemental disclosures and depositions only if and when there will be a jury trial on Doe's damages claims.

### C. Conclusion

In light of the significantly different views expressed above and their impact on the timing and structure of any trial of this matter, the parties respectfully suggest that the Court schedule a status conference to address the foregoing issues, the need for additional briefing, the schedule going forward, and any other issues that the Court may deem appropriate.

---

[17] *See, e.g., Sorenson v. H & R Block, Inc.,* No. CIV.A.99-10268-DPW, 2002 WL 31194868, at *14 (D. Mass. Aug. 27, 2002), aff'd, 107 F. App'x 227 (1st Cir. 2004); *Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888, 893 (1st Cir. 1988); *John Hancock Mut. Life Ins. Co. v. Banerji*, 447 Mass. 875, 888 (2006); *St. Charles v. Kender*, 38 Mass. App. Ct. 155, 159, 646 N.E.2d 411, 413 (1995); *Sackett v. St. Mary's Church Soc.*, 18 Mass. App. Ct. 186, 188–89, 464 N.E.2d 956, 958 (1984); *McCone v. New England Tel. & Tel. Co.*, 393 Mass. 231, 235, 471 N.E.2d 47, 50 n.8 (1984).

Respectfully submitted,

Trustees of Boston College, Paul J. Chebator,
Carole Hughes, Catherine-Mary Rivera,
Patrick J. Keating, and Barbara Jones

By their attorneys,

/s/ Daryl J. Lapp
Daryl J. Lapp, BBO No. 554980
Elizabeth H. Kelly, BBO No. 672277
Katherine A. Guarino, BBO No. 681848
Locke Lord LLP
111 Huntington Avenue
Boston, MA 02199
(617) 230-0100
daryl.lapp@lockelord.com
liz.kelly@lockelord.com
katherine.guarino@lockelord.com

John Doe, Mary Doe, and James Doe

By their attorneys,

DLA PIPER LLP (US)

/s/ Matthew J. Iverson
Matthew J. Iverson (BBO # 653880)
33 Arch Street, 26th Floor
Boston, MA 02110
(617) 406-6000
(617) 406-6100 (fax)
matthew.iverson@dlapiper.com

/s/ Charles B. Wayne
Charles B. Wayne (*pro hac vice*)
500 8th Street, N.W.
Washington, D.C. 20004
(202) 799-4253
(202) 799-5253 (fax)
charles.wayne@dlapiper.com

8

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of August, 2018, a copy of the foregoing was served by electronic mail using the CM/ECF System, which will then send notification of such filing to all counsel of record.

/s/ Charles B. Wayne
Charles B. Wayne