UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOHN DOE,

   Plaintiff

  v.

BOSTON COLLEGE,

   Defendant

Civil Action No. 15-10790-DJC

### DEFENDANT'S SCOPE-OF-TRIAL MEMORANDUM

**A. The Liability Issues to be Tried**

Doe's scope-of-trial memorandum misstates the First Circuit's decision and ignores the ruling this Court already has made in light of that decision about the issues remaining to be tried. The Court conducted a hearing on September 20, 2018, "about what the scope of claims for trial would be" (Transcript, Dkt. 109, at 3), at the conclusion of which the Court correctly ruled: "[W]hat only remains before me is as much of the breach of contract claim that concerned the 2012 proceeding as it relates to … the interference claims, that is, [1] the ex parte communication between the dean's office and the chair of the disciplinary committee and [2] the conversations about putting J.K. at ease. … [O]nly those two [claims] remain" with respect to both the contract and basic fairness claims.  (Tr. at 21-22.)  The Court's ruling was firmly grounded in the clear language of the First Circuit's decision, which affirmed summary judgment for BC on all claims except breach of contract and basic fairness specifically in relation to these two allegations of alleged "interference" with the Hearing Board's decision – [1] "[w]hether or not [Board Chair] Rivera's communications with B.C. administrators, while deliberations were still ongoing [*i.e.*, the "no finding" communication], inappropriately interfered with the Board's decision," and [2] "[w]hether or not [Dean] Hughes's directive to her subordinate about talking to Rivera on how the Board might put J.K. at ease" deprived Doe of a "fair procedure."  *Doe v.*

1

*Trustees of Boston Coll.*, 892 F.3d 67, 86-87 (1st Cir. 2018).[1]  At the hearing on September 20, the Court indicated that it would hear further from the parties "to address some of the issues related to the expert discovery that's outstanding and to get a sense of … what the likely motions in limine are" (Tr. at 24) – *i.e.*, the Court would hear further about scope of the *evidence* that will be offered (or contested) at trial, not about the scope of the *issues* to be tried.

Doe's argument that the First Circuit remanded for trial "the University's improper handling of … Doe's 'alternative culprit defense'" (Pl. Mem. at 1, 2) grossly mischaracterizes the First Circuit's decision and ignores the ruling about the issues to be tried that this Court already has made.  The remaining question is whether either of two specific communications with the Chair interfered with the Board's decision, which will involve evidence as to what the Chair understood those communications to mean; whether the other Board members were aware of the communications; if so, what they understood them to mean; and whether these communications influenced the Board's determination that it was Doe, rather than the "alternative culprit," who groped the female student.  This last point naturally will require the jury to consider the evidence that was presented at the hearing; how the Board evaluated and weighed that evidence; what factors caused the Board to reject Doe's "alternative culprit" defense; and whether that decision was influenced by either of the two communications at issue.  The First Circuit did not remand for trial any issue relating to events occurring "over a period of weeks" and "long before" the communications at issue, as Doe would have it (Pl. Mem. at 2, 4), such as whether "[t]he Sexual Assault Notification Form provided to Dean Hughes and others," *not* the Board, was misleading (*id.* at 3); the pre-hearing meetings that Doe's father had with

---

[1] The remaining claims in Counts I and IV relate only to John Doe and BC.  No claims remain with respect to Doe's parents, who were plaintiffs in the case, or the several BC administrators who were named individually as defendants.  The case captions in the parties' scope-of-trial memoranda thus refer only to Doe and BC.

2

Dean Hughes and BC's General Counsel, Joseph Herlihy (*id*. at 3-4); and the fact that BC gave JK the names of attorneys who might advise him. (*Id*. at 4.)

Nor did the First Circuit remand for trial a *de novo* consideration of the question whether Doe committed the assault for which he was found responsible – as Doe would have it, the opportunity "to prove his innocence" with "all the exculpatory evidence [now] at his disposal," including evidence that was not available to and never considered by the Board, including the subsequent dismissal of criminal charges against Doe and the "forensically enhanced" video. (Pl. Mem. at 5.) Doe cites no authority for his position, because it is well-settled that courts are not a forum for *de novo* review of school disciplinary decisions,[2] as this Court already has recognized. (Dkt. 89, at 40-41) (judicial review is limited to the question there was enough "evidence which, if believed, could have supported the board's decision") (quoting *Schaer v. Brandeis*, 432 Mass. 474, 479 n.9 (2000)).[3] More to the point, this Court already has decided, and the First Circuit has affirmed, that BC did not breach any obligation to Doe by not waiting for the availability of additional evidence including the supposedly "enhanced" video, 892 F.3d at 82; by not waiting for the conclusion of Doe's criminal case, *id*. at 83; or otherwise in relation to the evidence Doe was able to offer at the hearing, including with respect to his "alternative culprit" defense. (Dkt. 89 at 33, 48) (Doe's arguments on this subject presented no triable issue).

Nor is this case "like" *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195 (D. Mass. 2017), as Doe suggests (Pl. Mem. at 4). That Court ruled, not surprisingly, that if significant, exculpatory information is available, an accused student should have a "reasonable opportunity" to present

---

[2] *See Nicholas B. v. School Committee of Worcester*, 412 Mass. 20, 23 (1992); *see also Sill v. Penn. State Univ.*, 462 F.2d 463, 470 (3d Cir. 1972); *Doe v. Phillips Exeter Acad.*, No. 16-CV-396-JL, 2016 WL 6651310, at *2 (D.N.H. Nov. 10, 2016); *Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 313 (D.R.I. 2016); *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 461 (S.D.N.Y. 2015); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 755 (E.D. Tenn. 2009); *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 14 (D. Me. 2005).

[3] Notably, Doe did not appeal the Court's summary judgment ruling that the evidence supported the Board's finding.

that information to the Hearing Board. *Id*. at 218. As noted just above, this Court already has decided, and the First Circuit has affirmed, that Doe was not denied any such "opportunity" in this case. To the contrary, "Doe's contention that there was a third-party culprit, namely J.K., was squarely presented to the hearing board." (Dkt. 89, at 33.) Nothing about the *Amherst* case remotely suggests that a student such as Doe gets a *de novo* re-hearing of the underlying case in federal court, much less a re-hearing with supposedly "exculpatory evidence" that was not available when the university proceedings took place.

### B.     The Evidence on Liability

The Hearing Board members can explain the charges that were brought forward for a hearing, how the hearing was conducted, the evidence that was presented, the Board's deliberations, the rationale for their decision, what knowledge (if any) they had of the two communications at issue, and whether those communications influenced their decision. Doe can testify about the evidence that was presented at the hearing, including the evidence he presented in support of his "alternative culprit" defense. The parties can call other witnesses who have relevant, admissible evidence concerning the evidence presented at the hearing, the communications at issue, or the Board's deliberations. The case, so tried, will provide the jury all the evidence it needs, and the appropriate context for evaluating that evidence, in order to decide whether the two communications at issue improperly interfered with the Board's decision.

To the extent the scope of permissible evidence on liability is not resolved in connection with the hearing on March 7, BC will file appropriate motions in limine to preclude Doe from offering any evidence or argument with respect to (1) issues already resolved by this Court's summary judgment ruling and the First Circuit's decision; (2) the criminal charges against Doe, including the disposition of those charges; and (3) any evidence concerning the incident at issue

or Doe's claimed "innocence" that was not presented at the hearing, including for example the results of the swab test for blood on Doe's hands, the "enhanced" video, and the polygraph "test." If necessary, BC also anticipates filing motions in limine to exclude the proffered testimony of Doe's supposed liability experts, for reasons including the following.

Doe intends to call Brett Sokolow, an attorney who works as an investigator and consultant on campus sexual misconduct issues, to testify that (1) BC "failed to follow the 'custom and practice of the field' in many ways," including the alleged "improper handling" of Doe's "alternative culprit defense" and the Deans' alleged "interference in the Board's deliberations," and (2) that BC's conduct "failed to satisfy the 'common law duty of basic fairness' for the same reasons." (Pl. Mem. at 8.) Sokolow's report (Ex. B to Pl. Mem.) relates almost entirely to arguments about supposed unfairness and bias which this Court rejected on summary judgment and the First Circuit affirmed. (*Id*. at 44-59.) Moreover, whether BC followed the "custom and practice of the field," assuming one exists, is irrelevant. All that remains in this case is the question whether BC met its obligations to Doe under the contract between them, including the obligation to afford basic fairness as defined by the terms of that "express contractual promise." 892 F.3d at 88. What other universities do, and how they do it, is irrelevant to whether BC met its "express contractual promises" to Doe. Doe's argument that courts routinely admit expert testimony on "industry customs and practices" (Pl. Mem. at 7-8) misses the mark entirely, as courts do that in negligence cases, where the contours of a defendant's duty of care are at issue – not in contract cases such as this one. Moreover, Sokolow's opinion that BC failed to satisfy its contractual duty to afford basic fairness amounts to an improper attempt to define the contract's terms or what the law requires, neither of which an expert may do. *See, e.g., Pelletier v. Main St. Textiles, LP*, 470 F.3d 48, 54 (1st Cir. 2006);

5

*Hearts On Fire Co. v. Circa, Inc.*, No. 14-cv-11044-DLC, 2017 WL 4364405 at *6 (D. Mass Sept. 29, 2017); *S.E.C. v. Goldsworthy*, No. CIVA 06-10012 JGD, 2008 WL 2943398, at *4 (D. Mass. Jan. 3, 2008).  What basic fairness requires in the context of this case is something the First Circuit already has specified:  it would be a breach of contract and violation of basic fairness if the Deans interfered with the Board's deliberations.  What remains to be determined is whether, as a matter of fact, that happened.  And of course it is the jury's role to make that finding, which an expert may not usurp.  *See Doe v. Colgate Univ.*, No. 17-3594-CV, 2019 WL 190515, at *4 (2d Cir. Jan. 15, 2019) ("[Expert's] opinion that the University breached its contract with John Doe … usurps the jury's role in applying the law to the facts."); *see also Doe v. Univ. of the South*, No. 4:09-cv-00062-HSM-SKL, Dkt. 152 at 22-23 (D. Tenn. July 8, 2011) (in a student conduct case tried on both contract and negligence claims, the Court warned that Sokolow's opinions about the "fairness" of the proceedings were inadmissible on the contract claim).  Simply put, there is no issue in this case on which Sokolow properly can testify.

The same is true of Doe's two other liability experts, whose reports Doe did not attach to his scope-of-trial memorandum, but whom Doe apparently intends to call at trial.  The first is Michael R. Garneau, a videographer who prepared the "forensically analyzed" video that Doe wants to introduce to prove his claimed "innocence."  Garneu's opinions, summarized in the disclosure attached as Exhibit A, are irrelevant and inadmissible for reasons discussed above: the trial in this case will not include a *de novo* re-hearing of the allegations against Doe, much less a re-hearing based on evidence which never was presented to the Board and for which the Board had no obligation to wait.

Doe's remaining liability expert, Nancy Moore, is an expert on professional ethics for attorneys, whose opinions are summarized in the report attached as Exhibit B.  She would offer

opinions critical of the conduct of BC's in-house counsel, which have nothing to do with the issues remaining to be tried.  There is no claim, much less evidence, that BC's in-house counsel were part of the "at ease" or "no finding" communications.  To the contrary, the Court already has (1) ruled that BC's General Counsel did not interfere with the Board's deliberations, noting that his communications about the language of the Board's findings occurred after the Board made its decision *(*Dkt. 89, at 44), and (2) denied Doe's motion for leave to amend to assert claims against BC's general counsel (*id.* at 17), neither of which was disturbed on appeal.

### C. The Damages Issues to be Tried

The Court has ruled that if Doe prevails on liability, the jury can consider Doe's claimed damages resulting from the breach of contract.  (Dkt. 105.)  Doe can seek to prove contract damages comprising any educational costs he has incurred as a result of the delay in completing his undergraduate degree and any lost income he can establish as a result of either the delay in completing his law degree or the impact of the conduct finding on his employment prospects.

Doe cannot recover damages for emotional distress or reputational harm.  Such damages generally are not recoverable under Massachusetts contract law, which governs the only claims remaining in this case.  *See, e.g., Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888, 893 (1st Cir. 1988).[4]  To recover emotional distress damages under contract law, the plaintiff has to show that the emotional distress results from physical harm inflicted by the defendant; the emotional distress is the result of intentional or reckless conduct of an extreme and outrageous nature; or there is something inherent in the contract that would make emotional distress a foreseeable result of a breach.  *John Hancock Mut. Life Ins. Co. v. Banerji,* 447 Mass. 875, 888

---

[4] *See also Young v. Wells Fargo Bank, N.A.*, 109 F. Supp. 3d 387, 395 (D. Mass. 2015), *aff'd*, 828 F.3d 26 (1st Cir. 2016); *Williams v. Astra USA, Inc.*, 68 F. Supp. 2d 29, 37 (D. Mass. 1999); *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 388 (2005); *McCone v. New England Tel. & Tel. Co.*, 393 Mass. 231, 234 n.8 (1984); *Daley v. Town of W. Brookfield*, 19 Mass. App. Ct. 1019, 1019 (1985).

(2006); *St. Charles v. Kender*, 38 Mass. App. Ct. 155, 159 (1995); *see also Sorenson v. H & R Block, Inc.*, No. CIV.A.99-10268-DPW, 2002 WL 31194868, at *14 (D. Mass. Aug. 27, 2002), *aff'd*, 107 F. App'x 227 (1st Cir. 2004); *Jennings v. Nathanson*, 404 F. Supp. 2d 380, 398 (D. Mass. 2005).  This is not such a case.

Doe does not claim emotional distress resulting from physical harm inflicted by BC.  Nor does Doe's emotional distress result from any extreme and outrageous conduct, as this Court already has ruled.  (Dkt. 89 at 65-66) ("Doe provides no evidence that shows extreme or outrageous targeted behavior by the Defendants.").  And there is nothing inherent in the contract relating to campus disciplinary proceedings that would make emotional distress a foreseeable result of a breach of the handbook's provisions.  Cases that have allowed such recovery involve contracts that were designed to avert they very mental anguish that resulted from the breach.  *St. Charles,* 38 Mass. App. Ct. at 159 (citing *Sullivan v. O'Conner*, 363 Mass. 579, 587 (1973) (contract for plastic surgery intended to enhance beauty of professional entertainer); *Huskey v. Nat'l Broad. Co.*, 632 F. Supp. 1282, 1292-1293 (N.D. Ill. 1986) (contract to protect privacy of persons filmed for a television program by not showing their faces); *Stewart v. Rudner*, 349 Mich. 459, 469-473, 84 N.W.2d 816, 823-825 (1957) (contract to perform caesarean delivery for parents who had suffered two still-born births during vaginal deliveries)).  This is no such case.

To support his claim for emotional distress and reputational damages, Doe cites cases for the proposition that emotional distress foreseeably follows from the improper issuance of a criminal complaint.  (Pl. Mem. at 9.)  Those cases are inapposite, as it is undisputed that BC played no role in initiating the criminal case against Doe (Dkt. 89, at 4-5) and the initiation of a criminal charge, which is public and can lead to incarceration, is not remotely comparable to a private university finding of improper touching which results in a suspension.

Doe's reliance on *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 607 (D. Mass. 2016) (Pl. Mem. at 10), also is misplaced, as that case merely decided whether the plaintiff had stated a claim and said nothing about the scope of recoverable damages in the event the plaintiff ultimately prevailed. Also inapposite is *Benning v. Corp. of Marlboro Coll.*, No. 2:14-CV-71, 2014 WL 3844217, at *3 (D. Vt. Aug. 5, 2014) (Pl. Mem. at 10), in which a non-Massachusetts court stated that a student could recover for emotional and reputational harm resulting from a suspension. The court cited no case law supporting this conclusion; instead, it cited only the Restatement (Second) of Contracts, § 344(1), which generally addresses expectation damages and says nothing about recovery for emotional distress under contract law.

**D.     Evidence on Damages**

If the Court adopts BC's view with respect to emotional distress damages, there will be no occasion for Doe to call his treating psychiatrist, Dr. Michael W. Bain, who has been treating Doe for a range of emotional and psychological issues, some of which allegedly stem from the disciplinary proceedings at issue. BC will file a motion in limine as necessary.

BC also intends to file a motion in limine to preclude Doe's vocational expert, Stephen Shedlin, from testifying at trial. Shedlin opines that Doe's earning capacity as an attorney has been diminished as a result of emotional and psychological harm resulting from the conduct case at BC. (Doe expects to graduate from law school and begin practicing in May 2019.) If Doe cannot recover for emotional distress damages, it follows that he cannot recover for diminished earning capacity allegedly resulting from his claimed emotional distress. Moreover, even if Doe could recover emotional distress damages, Shedlin's opinion is inadmissible in any event. Shedlin admittedly has no mental health expertise. He purports to rely on the opinions of Dr. Bain, but Dr. Bain has expressed no opinion that Doe's psychological issues will impact his

9

earning capacity as an attorney, much less to what degree. Shedlin has made no attempt to compare Doe's academic or work performance before and after the events at issue. And he purports to have determined a specific reduction in Doe's earning capacity, which he admits is based on no methodology whatsoever, much less one that he can demonstrate is reliable.

BC also intends to file a motion in limine with respect to Doe's economist, whose opinions with respect to the financial implications of Doe's alleged diminution in earning capacity are based upon Shedlin's inadmissible opinions about that claimed diminution.

## CONCLUSION

The Court should enter an appropriate order or orders, limiting the scope of the evidence that will be permitted at trial as BC has argued above.

TRUSTEES OF BOSTON COLLEGE,

/s/ Elizabeth H. Kelly
Daryl J. Lapp (BBO No. 554980)
   daryl.lapp@lockelord.com
Elizabeth H. Kelly (BBO No. 672277)
   liz.kelly@lockelord.com
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA 02199
February 25, 2019         617.230.0100

### Certificate of Service

This document was served electronically upon all counsel of record by filing through the ECF system on this 25th day of February 2019.

/s/ Elizabeth H. Kelly
Elizabeth H. Kelly