UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOHN DOE,

        Plaintiff

   v.

TRUSTEES OF BOSTON COLLEGE,

        Defendant

Civil Action No. 15-10790-DJC

**DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF
SHEDLIN AND MORSE**

Boston College has filed contemporaneously with this motion a motion to exclude all evidence relating to Doe's claimed emotional distress, including but not limited to the testimony of Doe's damages experts – Dr. Bain, Mr. Shedlin, and Dr. Morse. If that motion is allowed, this one will be moot. If that motion is denied in whole or in part, the testimony of Shedlin and Morse should be excluded in any event for the additional reasons that follow.

**I.    Additional Reasons to Exclude Shedlin's Testimony.**

Assuming for the sake of argument that Doe could recover for lost earning capacity associated with his claimed emotional distress, Shedlin's testimony should still be excluded under Rule 702. To be admissible, expert testimony must be based on "scientific, technical, or other specialized knowledge," aid the trier of fact to understand the evidence or to determine a fact in issue, be based on sufficient facts or data, be the product of reliable principles and methods, and reliably apply those principles and methods to the facts of the case. Fed. R. Evid. 702. Shedlin's opinions fail to pass that test.

Shedlin opines that before suffering the psychological injuries that Dr. Bain attributes to the outcome of Doe's conduct case, Doe would have been able to earn between the 50th and 75th percentile of salaries for lawyers in three geographic areas where Doe was interested in working

1

– a range he arrived at simply because he "assumed [Doe] would have been someone who would have functioned on a higher level." Shedlin Dep. (excerpts attached as Ex. A), Vol. II at 88. He goes on to opine that due to the psychological injuries Dr. Bain has described, Doe's earning capacity will be only in the 25th to 50th salary percentiles – a range he arrived at simply by "assuming . . . post-incident [Doe would be] in the lower end of the median range." *Id.*

When asked how he came up with these before-and-after assessments of Doe's earning capacity, Shedlin could only respond, "Because that's what I do as a vocational person." *Id.* at 66. He admittedly has no mental health expertise and no basis for making his own assessment of the nature or severity of Doe's emotional harm. *Id.*, Vol. I at 47-48; Vol. II at 64-66, 98-99. He purports to rely on the opinions of Dr. Bain, but Dr. Bain's report expresses no opinion whatsoever that Doe's psychological issues would impact his ability to work and perform as an attorney, much less to what degree. *Id.*, Vol II at 40-47, 57-58. Shedlin has made no attempt to compare Doe's academic performance before and after the events at issue, which obviously could be relevant to Doe's earning capacity; nor has he made any effort to obtain any information about Doe's performance working in law firms before or after the events at issue. *Id.* at 50-54; *cf. McMillan v. Weeks Marine, Inc.*, 478 F. Supp. 2d 651, 658 (D. Del. 2007) (vocational expert opinion lacked foundation where he failed to consider plaintiff's work history). To the contrary, Shedlin admits that as far as he is aware, the firm for which Doe has been working most recently may consider him today – post-injury – to be the best law clerk they ever have had and be eager to welcome him as a new associate upon his graduation from law school. Ex. A, Vol. II at 52-53.

Shedlin admittedly has done nothing to test his hypothesis about the supposed impairment of Doe's earning capacity, even though he further admits that there may be

information available about the job performance of attorneys who experience depression or other mental health issues – something he has made no effort to find. *Id.* at 54-57, 98-99. He further admits that his opinion is not based on any methodology that he can demonstrate is reliable. *Id.* at 66, 88-93, 98-99. In such a case, the expert's opinion should be excluded.

This further demonstrates how remote, speculative, hypothetical, and not within the realm of reasonable certainty Doe's lost future earnings damages are. Damages cannot be calculated based solely on Shedlin's speculative conclusions, which themselves are rooted in an unreliable methodology. *See Bos. Partners Asset Mgmt. L.P. v. Archambo*, No. 025614BLS, 2005 WL 503940, at *5 (Mass. Super. Ct. Jan. 18, 2005) (denying reputational damages in contract case where damages were based on unreliable expert opinions).

Where, as here, the expert's opinion is unqualified, is not based upon specific facts relating to the case, and does not involve any reliable methodology, it should be excluded. *E.g., Elcock v. Kmart Corp.*, 233 F.3d 734, 747 (3d Cir. 2000); *Polaino v. Bayer Corp.*, 122 F. Supp. 2d 63, 67 (D. Mass. 2000).

## II.     Dr. Morse's Opinions Rest Entirely on Shedlin's.

Dr. Morse's present valuation of Doe's supposed lost earning capacity rests entirely on Shedlin's report. Dkt. No. 115-1, Ex. D. To arrive at his opinions, Dr. Morse ran some mathematical calculations using the mid-points of the before-and-after salary ranges that Shedlin described. Id. at p. 2. Because Shedlin's testimony should be excluded, for the reasons set forth above, it follows that Dr. Morse's also should be.

## Conclusion

The Court should enter an order excluding any testimony by Shedlin or Morse.

TRUSTEES OF BOSTON COLLEGE,

/s/ Elizabeth H. Kelly
Daryl J. Lapp (BBO No. 554980)
  daryl.lapp@lockelord.com
Elizabeth H. Kelly (BBO No. 672277)
  liz.kelly@lockelord.com
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA 02199
617.230.0100

March 21, 2019

## Certificate of Compliance with L.R. 7.1

Counsel have conferred in good faith in an effort to resolve or narrow the issues presented in this motion.

## Certificate of Service

This document was served electronically upon all counsel of record by filing through the ECF system on this 21st day of March 2019.

/*s*/ Elizabeth H. Kelly
Elizabeth H. Kelly

4

70940302v.3