UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOHN DOE et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) **Civil Action No. 15-cv-10790** |
| **TRUSTEES OF BOSTON COLLEGE et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

<u>**MEMORANDUM AND ORDER**</u>

**CASPER, J.**                                                                                    **March 31, 2021**

## I.      Introduction

Plaintiffs John Doe ("Doe"), Mary Doe ("Mary") and James Doe ("James") (collectively, "Doe") filed this lawsuit asserting several claims against Defendants Trustees of Boston College ("BC") and various BC administrators Paul Chebator ("Chebator"), Carole Hughes ("Hughes"), Catherine-Mary Rivera ("Rivera"), Patrick J. Keating ("Keating") and Barbara Jones ("Jones") (collectively, "Individual Defendants"), for the disciplinary action that BC took against Doe for an alleged sexual assault against another student, A.B., on a Spirit of Boston cruise in October 2012. Doe alleged that BC's hearing board process resulting in his suspension violated BC's express and implied contract with its students, failed to provide a fair process, violated Title IX of the Education Amendments of 1972, 20 U.S.C. 1681-1688 ("Title IX"), and amounted to negligence and negligent and intentional infliction of emotional distress.  D. 1; D. 89 at 1.  As to the breach of

1

contract and fair process claims, Doe asserted several grounds for the claims including whether BC administrators had interfered with the hearing board's consideration of Doe's discipline in 2012.  D. 1; D. 89 at 43-44.  This Court allowed summary judgment for BC and the Individual Defendants on all of Doe's claims.  D. 89.

The First Circuit affirmed that ruling except as to Doe's claim that interference with the hearing board's consideration of his case (specifically, in the form of ex parte communications between the dean's office and the chair of the disciplinary committee and about putting "J.K.," an alternative culprit proffered by Doe, "at ease") gave rise to his breach of contract claim and his basic fairness claims.  D. 98 at 33-35, 37.  In light of the remand and the differing views of the parties of the scope of evidence that could be proffered at trial given the affirming of summary judgment to Defendants on all but one ground for these two claims, the Court solicited counsel's views, heard argument from counsel, considered those arguments and gave counsel guidance as to the scope of same.  In his opening and certain examinations, Doe's attorney, Charles Wayne, did not abide by those rulings necessitating curative instructions from the Court to the jury.  BC now moves for judgment as a matter of law or, alternatively, a new trial for the prejudice that BC suffered from same, namely a verdict in Doe's favor.  D. 205.  After careful consideration of the parties' arguments, D. 205-08, the evidence presented at trial, the conduct of Attorney Wayne and the multiple curative instructions that the Court gave in light of same, the Court concludes that overturning the jury's verdict or granting a new trial is not warranted here.  Accordingly, the Court DENIES BC's motion.

## II.     Standard of Review

### A.      <u>Motion for Judgment as a Matter of Law</u>

Fed. R. Civ. P. 50 provides that a party may file for judgment as a matter of law when "a reasonable jury would not have a legally sufficient evidentiary basis" to find in favor of the

nonmoving party.  Fed. R. Civ. P. 50(a)(1); Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 39 (1st Cir. 2010).  A movant faces an "uphill battle," as "[c]ourts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." T G Plastics Trading Co., Inc. v. Toray Plastics (Am.), Inc., 775 F.3d 31, 38 (1st Cir. 2014) (alteration in original) (internal citation omitted).  "If instead fair-minded person could draw different inferences from the evidence presented at trial, the matter is for the jury." Espada v. Lugo, 312 F.3d 1, 2 (1st Cir. 2002).  Accordingly, the "court 'may not consider the credibility of witnesses, resolve conflicts in testimony or evaluate the weight of the evidence.'" Barkan, 627 F.3d at 39 (internal citation omitted).

**B.     Motion for New Trial**

Fed. R. Civ. P. 59(a)(1)(A) allows a court to "grant a new trial on all or some of the issues— and to any party" following a jury trial, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  Generally, a district court may order a new trial "only if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice." Crowe v. Marchand, 506 F.3d 13, 19 (1st Cir. 2007) (quoting Casillas–Díaz v. Palau, 463 F.3d 77, 81 (1st Cir. 2006)).  "[A] district court has the power and duty to order a new trial whenever, in its judgment, the action is required in order to prevent injustice," and the Court may independently weigh the evidence presented at trial. Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009) (quoting Kearns v. Keystone Shipping Co., 863 F.2d 177, 181 (1st Cir. 1988)).  "[T]he trial judge's discretion, although great, must be exercised with due regard to the rights of both parties to have questions which are fairly open resolved finally by the jury at a single trial." Ahern v. Scholz, 85 F.3d 774, 780 (1st Cir. 1996)

(quoting Coffran v. Hitchcock Clinic, Inc., 683 F.2d 5, 6 (1st Cir. 1982)).  That is, a judge "cannot displace a jury's verdict merely because he disagrees with it or would have found otherwise in a bench trial." Id. (quoting Milone v. Moceri Family, Inc., 847 F.2d 35, 37 (1st Cir. 1988)).

## III.   Procedural History

Doe instituted this action on March 11, 2015.  D. 1.  On October 4, 2016, the Court allowed BC and the Individual Defendants' motions for summary judgment and denied Doe's partial summary judgment motion.  D. 89.  Following judgment by the First Circuit affirming in part and vacating in part the Court's ruling, D. 99, the case went to trial in September 2019 on Doe's remaining "interference" ground for his breach of contract and basic fairness claims.   On September 23, 2019, the jury returned a verdict in Doe's favor.  D. 184.  Prior to that verdict, BC moved for judgment as a matter of law.  D. 179.  The Court has now entered judgment.  D. 201. Following entry of judgment, BC has now renewed its motion for judgment as a matter of law and, alternatively, moves for a new trial.  D. 205.  The Court now addresses this pending motion.

## IV.   Discussion

### A.      Court Orders Regarding the Scope of Evidence at Trial

#### 1.    In the Aftermath of the Remand

In the immediate wake of the First Circuit's decision affirming in part and reversing in part the Court's summary judgment ruling, the Court solicited a joint statement from the parties about how they intended to proceed.  D. 101.  The parties' joint statement, D. 102 (filed on August 1, 2018), made clear that the parties had different views about what remained for trial after the First Circuit's ruling, whether those claims should be tried to a jury, whether liability and damages should be bifurcated and what damages were available to Doe for the remainder of his claims. Compare D. 102 at 1-4 with D. 102 at 4-7.  Given this disagreement, the Court held a status conference to hear counsel's respective views.  At the September 20, 2018 status conference,

4

Attorney Wayne made clear Doe's position that the First Circuit had remanded "the entire basic fairness" claim, not just as to the 2012 disciplinary proceeding, but the further administrative review in 2014.  D. 109 at 5-9.  BC's position was that the basic fairness claim only survived to the extent that portions of Doe's breach of contract claim survived, namely only as to the two interference grounds concerning the 2012 proceedings (i.e., Dean Hughes's communication with the hearing board chair Ms. Rivera and the communication about putting J.K. at ease grounds). D. 109 at 13-16.  At the end of the status conference, the Court gave counsel its view about the scope of what remained for trial:

> I do think the First Circuit was clear, and the upshot of their opinion was that what only remains before me is as much of the breach of contract claim that concerned the 2012 proceeding as it relates to what I've been referring to as the interference claims, that is, the ex parte communication between the dean's office and the chair of the disciplinary committee and the conversations about putting J.K., the alternative culprit, at ease.

> I think the court was clear in parsing out all of the other breach of contract bases that were raised by the Does on appeal, and only those two remain.

> I also think the basis fairness claim also only remains as to the 2012 proceeding and related to those interference claims.

D. 109 at 21-22.  In giving counsel this ruling, the Court anticipated that there would be further discussion and motion practice about "what evidence actually comes in, counsel, now that I've ruled about scope."  D. 109 at 24.  A week later, September 28, 2018, the Court ruled in Doe's favor that he was entitled to a jury trial on the claims that remained and ordered counsel to confer and propose a pretrial and trial schedule.  D. 105.  That joint proposal acknowledged that the parties had "significant differences" about, among other things, "the scope of the trial and the evidence that may be introduced at trial" and "the fact witness testimony that may be introduced on liability."  D. 106 at 1.  To this end, the proposed scheduled suggested a briefing schedule and hearing regarding same (and the disputed issue of expert testimony and available categories of

damages) six weeks ahead of the proposed trial date.  D. 106 at 1-2.  The Court adopted the substance of the proposal setting a hearing on the "scope of trial issues" for March 7, 2019, ahead of the original trial date of April 22, 2019.  D. 107-08.

The parties' pre-hearing filings reflected their continuing disagreement about the scope of trial.  Although acknowledging that "the First Circuit narrowed the legal and factual scope of this case on remand to some extent," D. 115 at 3, Doe took the position that BC's view of the only relevant evidence concerning the no finding statement and the at east statement was too narrow and "would require plaintiff to try this case in a vacuum and in a way that would be incomprehensible to the jury."  D. 115 at 4.  As to the J.K. issue, Doe took the position that the centrality of alternative culprit defense, testifying that he did not assault his fellow student, A.B, and the introduction of all "exculpatory evidence" (including dismissal of any criminal charges) should be before the jury.  D. 115 at 6-7.  As to the other interference claim, regarding Dean Hughes's communication regarding a "no finding" option to hearing board Chair Rivera, Doe contested BC's "cramped view" that the evidence should be limited to the statement made and the Board's views on the effect on its deliberations.  D. 115 at 8.  BC's filing noted that Doe's position was inconsistent both with the First Circuit's opinion and this Court's ruling about the scope of trial in light of the remand.  D. 116 at 1.  BC noted, among other things, that the First Circuit had not remanded for consideration of Doe's alternative culprit defense, as Doe contend, or pre-hearing matters or a *de novo* determination of whether Doe had committed the offense for which the administrative board had found him responsible.  D. 116 at 2-3.  As to Doe's contention that the jury would lack context for understanding the claims that remain, BC posited that the "Hearing Board members can explain the charges that were brought forward for a hearing, how the hearing was conducted, the evidence that was presented, the Board's deliberations, the rationale for their

decision, what knowledge (if any) they had of the two communications at issue, and whether those communications influenced their decision. Doe can testify about the evidence that was presented at the hearing, including the evidence he presented in support of his 'alternative culprit' defense. The parties can call other witnesses who have relevant, admissible evidence concerning the evidence presented at the hearing, the communications at issue, or the Board's deliberations." D. 116 at 4.

At the March 7, 2019 hearing, the Court noted that "in making [the] ruling [about] what the scope of trial was, as a practical matter, we needed to sort of talk about what as [a] practical matter would be the evidence before the jury because it was much larger scope if all of the claims were still before the jury, and now we only have a subset of those claims." D. 119 at 12-13. The Court heard from both sides: Doe, who took the position that motivations of Dean Hughes and pre-hearing conduct by the administration should be admitted and BC, that took the position that the interference claims were focused on what was before the disciplinary board and whether any administrative contacts interfered with the board's deliberations. See generally D. 119. Counsel agreed that the trial would not be "a trial de novo of the underlying events that were the subject of the campus [disciplinary] hearing," D. 119 at 4 (Attorney Wayne) and that the jury should not be instructed about the disposition of the other of Doe's claims that were resolved by the First Circuit. D. 119 at 34. At the end of the hearing, the Court shared its inclinations about the scope of evidence at trial:

> In terms of what the scope of evidence is, counsel, just for your planning purposes, I wanted to give you my inclinations, and my intention is to enter an ECF order that sort of confirms this once I've decided the emotional distress issue.
>
> But, counsel, you know, I've decided the scope of the breach of contract claim that remains, which is interference with the board as to their deliberations and this alternative culprit defense and so much of the basic fairness claim that relied on that breach of contract basis. So I wasn't revisiting that. I certainly appreciated the

arguments and the briefing on either side about what that looks like in terms of evidence.

I do think this is, at base, about what the board decided and whether or not there was interference with – by the administration in that process, either as to what their finding would be or as to how they treated the J.K. evidence.  So I don't think everything – everything that was essentially rejected by the 1st Circuit is before or is properly before this jury.  That is, any argument or evidence about whether or not the committee's decision was correct, any evidence that was not before the committee I don't think is before this jury.  I do think everything that was before the committee is properly before this jury so that they have the proper context for deciding that issue.  And also what the communications were from outsiders to the committee, the administration to the committee, what they understood those communications to mean and, quite critically, whether those communications influenced their finding about Doe in terms of responsibility for the lesser included. So that is both the information before them, their deliberative process, how they waited and what effect it had on their finding.

I don't – as I said, I don't think the defense, as it's been summarized, is opening the door to any argument that would go beyond what I think is the proper scope of evidence.  I didn't hear that today, and I don't think the sort of correctness or asking this jury to decide the correct result is properly before them.

D. 119 at 56-57.  On March 20, 2019, the Court adopted as final the inclinations about the scope of evidence that it had shared with counsel at the March 7, 2019 hearing and denied Doe's motion to submit any emotional distress damages claim to the jury on what remained of his claims, another subject of the March 7th hearing.  D. 124.

## 2.   *In Preparation for the Original Trial Date on April 22, 2019*

On April 4, 2019, the Court conducted a final pretrial conference to hear counsel on the various motions in limine and other pretrial matters in anticipation of the April 22, 2019 trial date.  D. 152.  As to the scope of evidence at trial, certain of the motions in limine concerned the admissibility of expert testimony offered by Doe (proffered experts Sokolow and Moore, Shedlin, Morse), and exclusion of evidence of emotional distress given the Court's ruling that the remaining claims did not give rise to same.  See generally D. 152. The Court gave counsel its inclinations at the end of the hearing (to be followed by

definitive rulings on ECF), D. 152 at 50-53, discussed other pretrial matters and indicated that it would have more time to discuss matters on the first day of trial before jurors were brought to the courtroom for empanelment.  D. 152 at 62.  In the days that following the final pretrial conference, the Court issued its final rulings on the motions in limine.  D. 146, 150-51, 154-57.  Without repeating the substance of those rulings, the Court notes that a number of these rulings reflected the Court's rulings about the scope of remaining claims, not just given the unavailability of emotional distress damages, but also as to evidence as to liability.  See, e.g., D. 150 (excluding testimony of Doe's proffered expert Moore noting, among other things, that it was "not clear how such opinion is relevant to the claims that remain, particularly when" a portion of the opinion concerned "the timing of the Board hearing and training of those on the Board which relate to claims that remain dismissed"); D. 157 (excluding Doe's proffered expert Sokolow noting, among other things, that the opinion regarding Title IX was not relevant when the First Circuit had affirmed summary judgment for BC regarding same and that his opinion that BC owed a duty to Doe beyond their contract was contrary to the First Circuit's express ruling that the school "did not owe the Does any additional independent duty outside of their existing contractual relationship," citing D. 98 at 53).

### 3.  In Preparation for the Trial Date of September 16, 2019

Based upon Attorney Wayne's illness on the eve of the April 22nd trial, the Court allowed the assented-to motion to continue the trial.  D. 161.  At the parties' request, D. 163, the Court reset the trial for September 16, 2019.  D. 164.  Before this new trial date, the Court held a further final pretrial conference on September 12, 2019 to review trial logistics with counsel and consider two new motions.  D.  173, 197 at 4.  One of those

motions was to preclude testimony by Ms. Fee and Mr. Lewis, witnesses to be offered by Doe as to the third-party culprit issue. D. 167. After hearing from counsel, the Court indicated its inclination to exclude such testimony where neither was involved in the hearing and had no bearing on the interference claims for the jury. D. 197 at 18. The second was whether opinions from Doe's proffered damages experts, Shedlin and Morse, were new and could be offered on a valuation of the "stigma" that Doe would suffer in the (legal) marketplace where the Court had previously ruled that emotional distress damages were not available for his remaining claims. D. 170; D. 197 at 22-33. The Court gave counsel a preview of the summary of the case that it would give to potential jurors, which made clear that even as the jurors would hear more about the hearing procedures and its outcome as context, the only claims for the jury to decide were the interference claims— administrator communication to put J.K. at ease; and that a "no finding" result was a permissible, but discouraged result. D. 197 at 35. The Court formally allowed BC's motion to exclude Fee and Lewis citing the "now well established scope of this trial (concerning the Plaintiff's claims of 'interference' with the Hearing Board) and contract remedies that do not include emotional distress damages." D. 174. On the first day, before empanelment, the Court informed counsel that it denied BC's motion to exclude the further proffered opinions form Shedlin and Morse. D. 175.

### 4. Trial Begins

Once the jury was empaneled, the Court gave the jury preliminary instructions including about the scope of trial:

> As I said during jury selection, the plaintiff, Mr. Doe, asserts two claims against the defendant, Boston College, for breach of an express contract arising from BC's student guide and conduct board procedures and for breach of an implied duty implicit in such contract to provide him basic fairness.

The only bases for these claims and the only issue for you to decide as to whether the plaintiff has sustained his burden as to the contract claims is whether BC's alleged interference with the hearing board in the form of communications about, one, about putting another student, J.K., whom the plaintiff alleged was the true culprit . . . at ease when he testified; and two, a communication about a no finding result about Mr. Doe being a permissible but a discouraged result, whether or not those communications breached either Boston College's express contract or its implied duty under that contract to provide Mr. Doe with basic fairness.

Although for the context of these claims you will likely hear about other aspects of BC's investigation, the hearing board's hearing deliberations and its ultimate decision, these matters are not before you to review and do not form the basis of the plaintiff's claims.  The only matters for you to consider is whether Boston College's alleged interference with the hearing board in either or both of those communications that I summarized constitute a breach of the express or implied contract.

D. 187 at 26-27.

### B.       Need for Curative Instructions in Light of Attorney Wayne's Opening and Portions of Examinations

Despite the rulings by the Court about the scope of issues and evidence before the jury and on the heels of this preliminary instruction to the jury about the scope of same, Attorney Wayne did not limit his opening to the interference claims and the context for same, but included, among other things, challenges to the hearing board process that had been rejected by this Court and the First Circuit on appeal.  See generally D. 187 at 42-55.  For instance, he argued about the inappropriate investigation by BC (rejected by the First Circuit as a matter of law, D. 98 at 19-23), BC's failure to wait for forensic evidence (rejected by the First Circuit as a matter of law, D. 98 at 22-23) and the appropriateness of the hearing date set by BC (rejected by the First Circuit as a matter of law, D. 98 at 23-24).  Although BC had not objected during Doe's opening, it registered same outside of the presence of the jury, D. 187 at 69, and the Court indicated that it would have sustained that objection.  D. 187 at 70.  Instead, the Court promptly gave a curative instruction to

the jury, before evidence began, reiterating the scope of issues before them, that some context was

needed for same and further instructing:

> To the extent, however, you've heard contentions or arguments about the propriety of Boston College's investigation or the steps it took to the hearing, the timing of that hearing or the resolution of any criminal charges, the propriety of those matters, either in whole or in part, are not before you for ruling or review, as I previously mentioned.

D. 187 at 74.  Without repeating all that transpired through the presentation of evidence,

the Court notes that areas of Attorney Wayne's examination of witnesses drew objections

from BC for violation of the Court's rulings about the scope of issues for the jury.  The

objections (some sustained by the Court) began with the first witness, D. 187 at 18, 80-81,

83.  On the second day of trial, before resuming before the jury, the Court recounted for

counsel all of its rulings about the scope of issues for the jury.  D. 188 at 3-6.  Thereafter,

certain of the examination by Attorney Wayne drew objections of BC on these grounds;

many, but not all, of these objections were sustained by the Court.  As the Court explained

at various points, it understood the need for Doe to provide context for the remaining

interference concerns, but was concerned that the "context" that was presented was for the

purpose of trying issues that had been rejected by this Court and First Circuit.  D. 189 at

71.

### 1. Final Charge and Closing Arguments

By the time of the jury charge conference, BC requested that the Court include an

instruction in its jury charge that not only reiterated the proper scope of issues for the jury

to decide, but also instructed the jurors that various of the issues that Doe raised before the

jury had previously been decided in BC's favor.  D. 192 at 15-16.  The Court declined to

give the breadth of the instruction that BC requested, but instructed counsel that it would

revisit doing so if Attorney Wayne's closing argument returned to these arguments.  D. 192

at 18, 22.  The Court further warned that it if he did so, BC might have well-founded

grounds for a new trial if Doe prevailed.  D. 192 at 23.  The Court shared its version of the

instruction on this issue that it would give after the parties' closing arguments if it

concluded that Attorney Wayne's closing ran afoul of its rulings.  D. 193 at 6-7.

In the portion of its jury charge before closing arguments, the Court returned to this

issue:

> As I've previously explained to you, there is some evidence that was introduced for
> the limited purpose of providing context for the interference claims that Mr. Doe
> asserts before you.  Such evidence, whether it was offered from one witness or
> several witnesses, was admitted for the limited purpose of having you understand
> what led the hearing board to be having a hearing to begin with, that is, A.B.'s
> allegation against Mr. Doe for sexual assault, and what Mr. Doe alleges Boston
> College interfered with, that is, the hearing board proceedings and deliberations
> about A.B.'s allegation of sexual assault by Mr. Doe.  Accordingly, you may not
> consider it as to the propriety or reasonableness of Boston College's procedures
> and the steps it took leading up to the board hearing, the timing of that hearing, that
> is, whether or not they should have delayed that hearing to wait for other evidence
> or conclusion of the criminal process or the resolution of any criminal charge,
> except you may consider the fact of the pendency and later dismissal of criminal
> charges solely as to damages if you reach the issue of damages.  The reasonableness
> or propriety of those matters, either in whole or in part, are not before you for ruling
> or review, as I've previously mentioned in my preliminary instructions to you, both
> before and after you heard counsel's openings and during the course of this trial.
>
> Jurors, you may be wondering why if Mr. Doe and certain of his witnesses appear
> upset about other aspects of the disciplinary process, why you are not permitted to
> consider these other alleged deficiencies if plaintiff's breach of contract claims
> arises not just from the parties' express contract but also from an implied duty to
> provide basic fairness.  There's a legal reason for this distinction.  That is because
> the only claims that are asserted before you and the only ones for you to decide here
> are whether defendant, BC, breached such contractual duty as you've heard by
> making the alleged communication from BC to the hearing board about putting J.K.
> at ease and the alleged communication from BC to the hearing board that a result
> of no finding was available but discouraged, that is, the claims that you've heard
> reference to as the interference claims.  This trial is concerned with resolution of
> these interference claims after your consideration of the relevant facts in accordance
> with the law as I'll give it to you.  Whether Mr. Doe did or could raise viable claims

regarding other contested aspects of the proceedings is not an issue for you, this jury, to decide.

This case is also not about making a judgment as to what happened in October 2012 aboard the Spirit of Boston.  You're not being asked to determine what happened that night and you're not being asked to substitute your judgment for that of the hearing board that decided Mr. Doe's case.

D. 193 at 29-31.  Counsel for the parties delivered their closing arguments, both of which were focused on the interference claims before the jury.  D. 193 at 33-76.  Although BC asked for a curative instruction about the portion of Doe's closing concerning BC General Counsel Herlihy's discussion with the hearing board after it had finished its deliberations, but before it had issued its ruling, D. 193 at 86,[1] it did not request the broader instruction that it had proposed at the charge conference and the Court did not think such was necessary given the parameters of Attorney Wayne's closing argument.   The jury later returned a verdict in Doe's favor on the interference claims and awarded him $24,819.50 in lost tuition and fees and $77,607 in lost income and no diminished capacity damages.  D. 184.

C.    **Neither Judgment as a Matter of Law Nor a New Trial is Warranted**

Despite BC's objections during the trial (many of which were sustained), the Court does not conclude that judgment as a matter of law for BC or a new trial is warranted.  As to the judgment as a matter of law, there was sufficient evidence to support the jury's verdict on the interference claims.  In resolving those claims, the jury answered affirmatively to whether BC's "'at ease' and/or 'no finding' communications with the hearing board occurred and breached its contract with John Doe to provide basic fairness."  D. 184 at 1.  There was sufficient evidence

---

[1] To the extent that BC now also argues that the Court's rulings on testimony about pre-hearing meetings with Dean Hughes and arguments about General Counsel Herlihy's assistance to the hearing board were erroneous, D. 206 at 19-20, the Court rejects those arguments for the reasons stated at trial.

14

from which the jury could have reached this conclusion.  As to the communication about a "no finding" result being available, but discouraged, Dean Hughes testified that she had such a conversation with Board chair Rivera between the days of the hearing board's deliberations.  D. 188 at 160-61.  Although Rivera did not recall the conversation, D. 188 at 101-03, 67, the jury could have credited Dean Hughes' testimony over Rivera's.  Although the other hearing board members testified that this discouragement was not shared with them by Rivera, D. 191 at 23, 38-39, 51-52, 72-73, the jury could have credited the central role that Rivera, as chair, played in the deliberations particularly where the hearing board was still deliberating over its outcome.  The jury could have found interference as to either this ground or the "at ease" comment and need not have relied upon both to find in Doe's favor.  The Court understands BC's argument as to the putting J.K. "at ease" statement that the jury would have had to disbelieve both Ms. Davis's testimony that she did not communicate this message to Board Chair Rivera and Rivera's testimony that she did not receive it, D. 188 at 54, to conclude that the communication even reached the hearing board chair, much less any of the other members of the hearing board, all of whom denied receiving such statement.  D. 191 at 15-16, 34-35, 52, 68.  Given the ample cross examination of Davis and Rivera, the jury was not required to, but could have doubted their credibility on this point, and this alone is enough to defeat BC's high burden on this motion.  See Barkan, 627 F.3d at 39.

BC's motion for new trial fares no better.  As discussed above, the Court does not conclude that the verdict is against law and, even if another factfinder could have come to another conclusion about the evidence, this Court does not conclude that this jury's verdict was against the weight of the credible evidence.  In the context of a motion for new trial, the Court must also consider whether the verdict was tantamount to a miscarriage of justice such that a new trial is warranted. On this ground, BC points to Attorney Wayne's opening and its sustained objections to certain

portions of his examinations in contravention of the Court's rulings.  The Court gave careful consideration to this argument since, as summarized above, this was a concern discussed with counsel during the trial.  To determine whether such basis warrants a new trial, the Court must consider the totality of the circumstances including the nature of counsel's comments, their frequency, relevance to issues at hand, the manner in which the parties and Court handed them, strength of the case and the verdict.  Guzman v. Boeing Co., 366 F. Supp. 3d 219, 240-41 (D. Mass. 2019) (internal citation omitted).  Certainly, the first two factors, the nature and frequency of Attorney Wayne's comments in his opening and objectionable questions weigh in favor of the relief that BC is seeking.  Although the Court is tempted to penalize such conduct (or failure to appreciate that the case that he had to try for Doe was far different in the wake of the First Circuit's ruling than the one that he initially had plead), those are not the only considerations that the Court must make here.  This is particularly true in light of the instructions that the Court gave the jury about the issues for it to decide, both before and after the opening statements and the portion of its jury charge before the parties gave their closing arguments.  "A basic premise of our jury system is that the jury follows the court's instructions. 'We must assume that juries follow instructions.'" Refuse & Envtl. Sys., Inc. v. Indus. Servs. of Am., Inc., 932 F.2d 37, 40 (1st Cir. 1991) (internal citations omitted); see United States v. Woodward, 149 F.3d 46, 73 n.20 (1st Cir. 1998). While this presumption may be "rebutted only on a sufficient showing that the offending testimony reasonably could not have been ignored and that serious prejudice likely resulted," United States v. Rullan-Rivera, 60 F.3d 16, 18 (1st Cir. 1995), no such showing has been made here." Id.; United States v. Gonzalez-Vazquez, 219 F.3d 37, 48 (1st Cir. 2000).  That is, although a different factfinder may have come to a different verdict on the evidence, the Court does not conclude that

this verdict was result of improper conduct, particularly in light of the instructions that Court gave

the jury.  For all of these reasons, the Court also denies BC's alternative request for a new trial.

## V.    Conclusion

For the foregoing reasons, the Court DENIES the motion for judgment as a matter of law

or, alternatively, for new trial, D. 205.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge